624 P.2d 39

**Beverly KATZ, Petitioner,**

v.

**NEW MEXICO DEPARTMENT OF HUMAN SERVICES, INCOME SUPPORT DIVISION, Respondent,**

**New Mexico Chiropractors Association, Respondent.**

**No. 13177.**

Supreme Court of New Mexico.

Jan. 26, 1981.

Rehearing Denied Feb. 10, 1981.

Beverly Katz, pro se.

Jeff Bingaman, Atty. Gen., Aaron J. Wolf, Asst. Atty. Gen., Santa Fe, for respondent Dept. of Human Services, Income Support Division.

Anaya & Strumor, Robert M. Strumor, Santa Fe, for respondent N.M. Chiropractors Association.

## OPINION

EASLEY, Chief Justice.

Beverly Katz applied to the New Mexico Department of Human Services (DHS) for Medicaid benefits for medical services rendered to her by a chiropractor and a physical therapist. The DHS denied her the benefits following an administrative hearing. She appealed the DHS ruling to the Court of Appeals which affirmed. We granted certiorari and affirm in part and reverse in part.

The issues presented are: (1) whether state and federal statutes and regulations require the DHS to pay for the services

rendered by the chiropractor and the physical therapist; (2) whether the denial of Medicaid benefits violates the constitutional guaranty of equal protection; (3) whether Katz was denied due process of law by reason of inadequate notice of the administrative hearing held by the DHS; and (4) whether she is entitled to Medicaid benefits for laboratory and X-ray services.

Katz became ill and the DHS found her to be a "categorically needy" person qualified to receive benefits under the DHS Medical Assistance Program. She sought the aid of various licensed physicians who were unable to improve her condition other than by giving her drugs to mask the pain. The DHS paid for services by these physicians. She then began receiving treatment from a licensed chiropractor and a licensed physical therapist. According to her testimony at the DHS hearing, she experienced relief from pain for the first time in over two years by virtue of their treatments. The DHS refused to approve payment of these services. She requested and received an administrative hearing, but the denial of benefits was confirmed on the basis that the services of chiropractors and physical therapists are not covered by the Medical Assistance Program.

1. *Whether State and Federal Law Mandates DHS Payment of Chiropractors' and Physical Therapists' Services.*

The New Mexico Medical Assistance Program is operated by the DHS as part of a joint federal-state program established by Title XIX of the Social Security Act. Compliance with the federal requirements is a condition to the receipt of federal funds. 42 U.S.C. § 1396c (1976). Section 27–2–12, N.M.S.A.1978, therefore requires that the DHS must operate the program consistent with the federal act.

Participating states are required to provide financial assistance to qualified individuals in five general categories of medical services: inpatient hospital services; outpatient hospital services; other laboratory and X-ray services, skilled nursing facility services, specified screening services and family planning services; and physicians' services.

42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5). Of these categories, only "physicians' services" arguably includes the services of a chiropractor and a physical therapist.

"Physicians' services" as used in Section 1396d(a)(5) is limited to those services furnished by a physician as defined in Section 1395x(r)(1). Physician is therein defined as "a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he performs such function or action . . . ." By limiting the definition of physician to subsection (1) of § 1395x(r), Congress explicitly excluded chiropractors. *See* § 1395x(r)(5).

Katz points to the regulations promulgated by HEW under the act which define physicians' services as services provided "[w]ithin the scope of practice of medicine or osteopathy as defined by State law . . . ." 42 C.F.R. § 440.50 (1979). Katz argues that, under state law, the practice of medicine includes chiropractors' services. The practice of medicine is defined by Section 61–6–15, N.M.S.A.1978, and might arguably include chiropractic practices. However, Section 61–6–16, N.M.S.A.1978, expressly excludes chiropractic practices from the application of Sections 61–6–1 through 61–6–18, N.M.S.A.1978.

■ We therefore conclude that chiropractors' services are not physicians' services under the Medicaid program. Chiropractors' services thus are not included in the five general categories of medical treatment which must be included in the state plan.

■ Section 1396d(a) lists seventeen categories of medical services. Physical therapy is listed in subsection (11). As noted previously, only the first five categories, subsections (1) through (5), are required to be included in the state plan. We therefore also conclude that the services of a physical therapist are not required to be included in the state plan.

Having determined that payment for services of chiropractors and physical therapists under the Medicaid program is optional and not mandated by federal law, the

next question is whether this state has chosen to provide Medicaid payments for those services.

The only applicable state statute is Section 27–2–12, which provides that the DHS may by regulation provide medical assistance to persons eligible under the federal act. The DHS has promulgated such regulations in the Income Support Division (I.S.D.) Manual §§ 300, et seq.

■ The regulations contain a detailed explanation of services covered by the state Medicaid plan, but do not list all those medical services not covered. I.S.D. Manual § 310. But I.S.D. Manual § 303(B) states that the "Medical Assistance Program will not pay for service(s) that are not covered under the program." No provision is made for payment of the services of chiropractors or physical therapists. Thus, Katz is not entitled to financial assistance for those services.

Katz cites to a DHS regulation which allows coverage of chiropractic services for Medicare crossover claims. I.S.D. Manual § 300.33. Medicare crossover claims are claims paid by the DHS for those persons eligible for both Medicare and Medicaid. I.S.D. Manual § 300.3. There is no evidence in the record that Katz is eligible for Medicare. Section 300.33 thus has no bearing on her claim.

Katz nevertheless argues that the denial of these benefits is inconsistent with Congressional intent and the purposes and policies of the program. She points to 42 U.S.C. § 1396 as an expression of the aims of Congress in establishing the program. That section provides that the purpose of the program is:

> [to enable] each State, as far as practicable ..., to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of *necessary medical services* .... (Emphasis added.)

Katz contends that this expression of purpose indicates that Congress intended to provide financial assistance to eligible recipients for all *necessary* medical services, whether those services fall within the mandatory or optional medical services categories; that the distinction between mandatory and optional medical services is applicable only to unnecessary, though perhaps desirable, medical services. In support of this theory she cites *Rush v. Parham*, 440 F.Supp. 383 (N.D.Ga.1977) which held that "Medicaid coverage is not optional or discretionary for necessary medical treatment of eligible recipients." *Id.* at 389.

*Rush* is distinguishable from the case at hand. The medical services sought by the plaintiff in *Rush*, transsexual surgery, were to be performed by a licensed physician and therefore fell within the five mandatory categories of medical treatment. The court held only that "the state may not administer a State Plan which irrebuttably denies coverage of any services or procedures within the five required categories ...." *Id.* at 390. Indeed, the court noted that "the state may reasonably encourage or discourage an optional procedure with the availability of state Medicaid coverage ...." *Id.* at 390. *Rush* is not authority for the proposition that a state Medicaid plan must provide coverage for necessary medical services that fall within those categories of medical services deemed optional by federal law.

The construction of the federal statute urged by Katz is foreclosed by the United States Supreme Court's decision in *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). The Court held that a state was not required by federal law to provide funding for eligible individuals for elective, nontherapeutic abortions. The Court ruled that financial assistance for medical services within the five mandatory categories was required only where those services were necessary, stating that "[a]lthough serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage, it is hardly inconsistent with the objectives of the Act for a State to refuse to fund *unnecessary*—though perhaps desirable—medical services." *Id.* at 444–45, 97 S.Ct. at 2370–2371.

**534**

Under the statutory construction adopted by the Court in *Beal*, only necessary services within the five mandatory categories are required to be funded. Katz would have us construe the statute to mean that funding is required for necessary medical services in the optional categories of medical services. This interpretation would result in obliterating the distinction between the mandatory and optional categories explicitly written into the law by Congress. A statute must be construed so that no part of the statute is rendered surplusage or superfluous. *Cromer v. J. W. Jones Construction Company*, 79 N.M. 179, 441 P.2d 219 (Ct.App.1968), *overruled on other grounds, Schiller v. Southwest Air Rangers, Inc.*, 87 N.M. 476, 535 P.2d 1327 (1975). We must therefore conclude that it was not the intent of Congress to require that the state Medicaid plan provide financial assistance to eligible persons for medical services within the optional categories, even though those services may be medically necessary.

2. *Equal Protection.*

Katz contends that the denial to her of the claimed benefits violates her right to equal protection, in that the federal and state legislation creates different classifications of individuals eligible under the plan. Eligible individuals who receive necessary medical services from physicians receive financial assistance. But equally eligible persons who receive treatment from chiropractors or physical therapists are denied financial assistance even though those services are necessary, perhaps even vital, to their health and well-being.

As observed in *Maher v. Roe*, 432 U.S. 464, 469–70, 97 S.Ct. 2376, 2380–2381, 53 L.Ed.2d 484 (1977):

The Constitution imposes no obligation on the States to pay ... any of the medical expenses of indigents. But when a State decides to alleviate some of the hardships of poverty by providing medical care, the manner in which it dispenses benefits is subject to constitutional limitations. (Footnote omitted.)

A claim similar to that of Katz was presented in *Dist. of Col. Pod. Soc. v. District of Columbia*, 407 F.Supp. 1259 (D.D.C. 1975), in which the plaintiffs claimed that the denial of Medicaid benefits for certain services performed by podiatrists violated the Equal Protection Clause. The court dismissed the contention as "obviously without merit", stating:

The Supreme Court has clearly indicated that Congress has broad discretion in legislating social welfare programs. In upholding the old age benefits provisions in Titles VIII and II of the Social Security Act, the Court in *Helvering v. Davis* [301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937)] stated:

The line must still be drawn between one welfare and another, between particular and general. Where this shall be placed cannot be known through a formula in advance of the event. There is a middle ground or certainly a penumbra in which discretion is at large. The discretion, however, is not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.

Thus, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [*McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)] ... [T]here is an obvious congressional desire to limit Medicaid expenditures. In order to do so, Congress may have determined that distinctions between podiatrists and physicians as to the scope of compensable services and amount of compensation were appropriate. It is not for the courts to question the wisdom of such a determination which may favor physicians at the expense of podiatrists. A classification does not offend the Constitution merely "because in practice it results in some inequality." [*Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911)]. (Footnotes omitted.)

*Id.* at 1269.

These considerations of the broad legislative discretion in fashioning social welfare

programs and the limited scope of judicial review must govern our analysis of the issue presented here. Under these circumstances, we cannot say that the denial of Medicaid benefits for the services of chiropractors and physical therapists was so arbitrary and unreasonable as to constitute a denial of equal protection. These limitations may have been based upon financial considerations and a desire to limit the overall cost of the program. Title XIX is a welfare assistance program with limited funding and does not purport to provide coverage for all possible health services. *Dist. of Col. Pod. Soc., supra.* We will not substitute our judgment for that of the Legislature in determining how to allocate the limited funds. *See Helvering v. Davis, supra.*

We hold that the denial of benefits here did not abridge Katz' right to equal protection.

3. *Notice and Hearing.*

 Katz contends that her right to notice and hearing were violated because she was not given adequate notice prior to the hearing. She attended the hearing and was allowed to present her claim for financial assistance. However, she contends that lack of proper notice of the hearing left her inadequately prepared to present her claim. We find no merit to the claim.

The primary function of proper notice and fair hearing is the opportunity to be heard and to present any defense. *See Matter of Protest of Miller,* 88 N.M. 492, 542 P.2d 1182 (Ct.App.1975), *cert. denied,* 89 N.M. 5, 546 P.2d 70 (1975). Both in the hearing before the DHS and on this appeal, Katz has had adequate opportunity to present her case for financial assistance.

4. *Laboratory and X-ray Services.*

Katz was also denied Medicaid assistance for certain laboratory and X-ray services ordered by the chiropractor.

Laboratory and X-ray services fall within the five mandatory categories of medical services. 42 U.S.C. § 1396d(a)(3). 42 C.F.R. § 440.30 interprets laboratory and X-ray services as "professional and technical laboratory and radiological services—(a) Ordered and provided by or under the direction of a physician or other licensed practitioner of the healing arts within the scope of his practice as defined by State law . . . ."

A licensed chiropractor must be considered a "practitioner of the healing arts" under Section 61–4–2, N.M.S.A.1978. To the extent that I.S.D. Manual § 310–E disallows coverage of laboratory and. X-ray services on the basis that those services are ordered or performed by a licensed chiropractor, it conflicts with federal law. State law requires the DHS to administer the program consistent with the federal act. § 27–2–12, *supra.* The DHS therefore erred in denying Katz Medicaid assistance for laboratory and X-ray services on the basis that those services were ordered by a chiropractor.

We affirm the denial to Katz of Medicaid benefits for services rendered by a chiropractor and a physical therapist. We reverse the DHS as to its denial of financial assistance for laboratory and X-ray services on the basis that those services were ordered by a chiropractor.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, FEDERICI and RIORDAN, JJ., concur.