910 P.2d 914

**Diane D. DENISH and J. Michael Kelly, Petitioners,**

v.

**Hon. Gary JOHNSON, Governor of the State of New Mexico, Respondent.**

**No. 23182.**

Supreme Court of New Mexico.

Jan. 29, 1996.

Jacobvitz, Roybal & Thuma Marian Matthews, Albuquerque, for Petitioners.

Tom Udall, Attorney General, John H. Clough, Elizabeth A. Glenn, Assistant Attorneys General, Santa Fe, for Respondent.

## OPINION

FRANCHINI, Justice.

(1) Diane D. Denish and J. Michael Kelly applied to this Court with an Emergency Verified Petition for Writ of Mandamus and Request for Immediate Stay, to prevent Governor Gary E. Johnson from removing them from their positions as regents of New Mexico Institute of Mining and Technology and appointing their replacements. We granted the Stay and issued an Alternative Writ of Mandamus ordering the parties to brief whether the terms of Denish and Kelly have expired. We conclude that their terms have expired and that the Governor may nominate their successors in accordance with the State Constitution. We also find that the initial method by which the Governor attempted to remove Denish and Kelly was unconstitutional. However, because the Governor has agreed that Denish and Kelly are entitled to remain in their respective positions until their successors are appointed in accordance with the State Constitution, we need not issue a peremptory writ of mandamus.

## I. FACTS

(2) New Mexico Institute of Mining and Technology—commonly known as "New Mexico Tech"—is an undergraduate and graduate school located in Socorro, New Mexico. As required by the New Mexico Constitution, New Mexico Tech is controlled and managed by a board of five regents who are chosen by the Governor with the consent of the State Senate. N.M. Const. art. XII, § 13 (Cum.Supp.1995). Before 1994 all five regents were qualified electors of the state who served six year terms. *Id.* Under an amendment to the Constitution approved by the voters in 1994, one position on the Board of Regents is now filled by a student who is attending New Mexico Tech. *See* 1993 N.M.Laws, S.J.Res. 18, § 1 at 4446–49 (Constitutional Amendment 3, amending N.M. Const. art. XII, § 13, adopted at general election held Nov. 8, 1994).

(3) On February 2, 1987, Robert O. Anderson received a letter of appointment to the New Mexico Tech Board of Regents from then-Governor Garrey Carruthers. Anderson's term was effective January 29, 1987, and was to end six years later on January 1, 1993. On January 18, 1989, Governor Carruthers notified Dr. Carol Rymer that he had appointed her to the New Mexico Tech Board of Regents. Her term was effective January 1 of that year and was to end six year later on January 1, 1995.

(4) In July 1991 then-Governor Bruce King was informed by Anderson that he would be resigning his position as regent. In September of the same year, Rymer gave similar notice to the Governor.

(5) On December 9 of that same year, Governor King appointed Denish to replace Rymer and Kelly to replace Anderson. Inexplicably, the original letters of appointment for both Denish and Kelly specified five-and-one-half-year terms, running from January 1, 1992 to July, 1, 1997, rather than the constitutionally mandated six-year terms. These letters were apparently later rewritten. However, the letters still conferred upon the appointees an improper term length of five years, ending January 1, 1997, rather than six years.

(6) On January 21, 1992, Laurence H. Lattman, President of New Mexico Tech, sent a letter to Governor King's office. Lattman suggested that there were errors in the letters of appointment sent to Denish and Kelly. He noted that "a regent's term is normally six years, but Ms. Denish and Mr. Kelly were appointed for less than six years." He also suggested that when a regent is appointed to fill a midterm resignation, he or she should serve only for the unexpired term; this would preserve a system of staggered terms and insure that no more than two regents are replaced in any given year. He pointed out, however, that should Denish and Kelly serve the full five years granted by Governor King, the terms of four of the five regents would expire at the same time in 1997. On the other hand, this simultaneous expiration of appointments would not occur if Denish and Kelly merely completed the terms of their predecessors.[1]

(7) Governor King apparently did not act on Lattman's letter and no action was taken to correct these errors. Rather, on January 31, 1992, the Governor submitted the appointments of Denish and Kelly to the New Mexico State Senate for its consent. Senate Executive Message No. 19 (1992) ("Messages From The Governor" to the Senate); *see* N.M. Const. art. XII, § 13. Both appointments were confirmed by the Senate on February 6.

(8) No further action was taken on the appointments of Denish and Kelly until three years later, when current Governor Gary Johnson, on May 1, 1995, advised Denish by letter that her term as regent had ended. He explained:

On January 1, 1992, you were appointed to fill the position formerly held by Dr. Carol Rymer. Dr. Rymer was appointed on January 1, 1989; the term of her appointment was until January 1, 1995. Your appointment should have been for the unexpired term.

The six year-terms of the Board of Regents are staggered to maintain continuity and historical knowledge on the Board. Pursuant to the New Mexico Constitution, Article XX, Section 2, appointees hold office until a successor has been appointed.

I am writing to thank you for your service on the Board of Regents and to advise you I have appointed your successor, who will take office immediately.[2]

Denish sent a reply, dated May 10, 1995, stating that she could not be removed from office for the reasons suggested by the Governor. She made clear she intended to complete her term until it ended on January 1, 1997, as specified in Governor King's letter of appointment.[3]

(9) Governor Johnson sent letters to both Denish and Kelly on August 11, 1995, reiterating much of the information in his first letter to Denish. He concluded by telling Denish, "I have appointed your successor, Randall Horn of Bernalillo, who will take office immediately."[4] Similarly, the Governor informed Kelly that he would be replaced by "Dr. Robert E. Taylor of Silver City, who will take office immediately."[5]

(10) On the same day, the Governor advised Horn and Taylor that he had appointed them to the New Mexico Tech Board of Regents and that their terms commenced "immediately." He indicated that they were receiving "recess" appointments, presumably because they were appointed while the state legislature was in recess. He stated in the letters:

This recess appointment will remain in effect until you are confirmed by the New Mexico State Senate at the next session of

---

1.  Letter from Laurence H. Lattman, President, New Mexico Tech, to Elizabeth Martin, Office of Governor Bruce King (Jan. 21, 1992).

2.  Letter from Gary E. Johnson, Governor of New Mexico, to Diane D. Denish, Regent, New Mexico Tech (May 1, 1995).

3.  Letter from Diane D. Denish, Regent, New Mexico Tech, to Gary E. Johnson, Governor of New Mexico (May 10, 1995).

4.  Letter from Gary E. Johnson, Governor of New Mexico, to Diane D. Denish, Regent, New Mexico Tech (August 11, 1995).

5.  Letter from Gary E. Johnson, Governor of New Mexico, to J. Michael Kelly, Regent, New Mexico Tech (August 11, 1995).

the Legislature, at which time the appointment will be for the remainder of the term of office. In accordance with the provisions of the New Mexico Constitution you have all the powers, duties, and authority of the position.[6]

The Governor initiated the Senate approval process on August 25, 1995, with a letter to Manny Aragon, President Pro Tem of the Senate, submitting the appointments of Horn and Taylor "to the Interim Senate Rules Committee for their advice, consent and subsequent recommendation to the Forty–Second Legislature, Second Session...."[7]

(11) On August 18, 1995, Kelly wrote to the Governor disputing the Governor's power to replace him summarily. Kelly declared that he fully intended to complete his term ending January 1, 1997.[8] Kelly received a reply on August 30 in which the Governor reiterated that Kelly should have been appointed only for the period of his predecessor's unexpired term. "I regret that this happened," wrote the Governor, "but there is no alternative available to me except to void the incorrect term and adhere to the constitutionally mandated requirement of staggered terms." From this letter Kelly learned that his seat on the Board of Regents would be assumed by Taylor at the forthcoming September 19 board meeting.[9]

(12) Kelly at that time was chairman of the Board of Regents, and traditionally it was his responsibility to call a meeting of the board. Kelly wrote a letter on September 12, 1995, to Dr. Dan Lopez, President of New Mexico Tech, in which he cancelled the upcoming board meeting in order to avoid "an unnecessary and unpleasant confrontation at the September 19 meeting."[10] Although Kelly cancelled the meeting, Regent Steve S. Torres, Jr., three days later on September 15, designated himself "Temporary Chairman" of the New Mexico Tech board, and

scheduled a meeting for 10:00 a.m. on September 19. He published an agenda which included the "Election of Officers."

(13) In response Denish and Kelly applied to this Court on September 18 for an Emergency Verified Petition for Writ of Mandamus and Request for Immediate Stay. We assumed jurisdiction under New Mexico Constitution, Article VI, Section 3 (Repl. Pamp.1992) (granting the Supreme Court the "power to issue writs of mandamus"), and under New Mexico Constitution, Article XII, Section 13 ("The supreme court of the state of New Mexico is hereby given exclusive original jurisdiction over proceedings to remove members of the board under such rules as it may promulgate, and its decision in connection with such matters shall be final.").

(14) Denish and Kelly petitioned for an immediate stay to prevent the Governor from authorizing Horn and Taylor to participate as if they were New Mexico Tech regents at the September 19 meeting. In their petition they also requested that we enter a writ of mandamus prohibiting the Governor from removing them from office in violation of the State Constitution. We granted an Order of Stay preventing Horn and Taylor from participating on the Board of Regents at New Mexico Tech. We also issued an Alternative Writ of Mandamus ordering the parties to brief the issues they had raised before this Court, and we established a schedule for the filing of briefs. *See* NMSA 1978, § 44–2–6 (contents of an alternative writ of mandamus); NMSA 1978, § 44–2–7 (when peremptory or alternative writs are issued). We heard oral arguments on November 8, 1995.

## II. THE DISTINCTION BETWEEN A VACANCY IN OFFICE AND THE EXPIRATION OF A TERM

(15) The conflict in this case turns upon whether the terms of Denish and Kelly have

6. Letter from Gary E. Johnson, Governor of New Mexico, to Randall Horn (August 11, 1995); Letter from Gary E. Johnson, Governor of New Mexico, to Dr. Robert E. Taylor (August 11, 1995).

7. Letter from Gary E. Johnson, Governor of New Mexico, to Manny Aragon, President Pro Tem of the New Mexico State Senate (August 25, 1995).

8. Letter from J. Michael Kelly, Regent, New Mexico Tech, to Gary E. Johnson, Governor of New Mexico (August 18, 1995).

9. Letter from Gary E. Johnson, Governor of New Mexico, to J. Michael Kelly, Regent, New Mexico Tech (August 30, 1995).

10. Letter from J. Michael Kelly, Regent, New Mexico Tech, to Dr. Dan Lopez, President, New Mexico Tech (September 12, 1995).

actually expired and, if they have, what process is involved in appointing their replacements. Governor Johnson has conceded that his initial attempts to install Horn and Taylor were improper. He acknowledges "for purposes of this proceeding only, that his appointments to the positions on the Board of Regents of [New Mexico Tech] occupied by [Denish and Kelly] were premature, and that Petitioners may serve until their successors are chosen at the next legislative session." However, the Governor equivocates on this concession by taking "no position regarding whether the expiration of a regent's term generally creates a vacancy for purposes of the governor's interim appointment authority under Article XX, Section 5 of the New Mexico Constitution."

■■■ (16) We will discuss these matters in detail because the parties have expressed confusion about the extent of the Governor's powers when a term is vacated as opposed to when a term has expired. A *vacancy* occurs when an appointee leaves office before the completion of his or her constitutional or statutory term. A term *expires* when the appointee has served to the legally specified termination date.

(17) Very little has been written in New Mexico about the specific issues raised by this case. Courts in other jurisdictions have addressed the powers of the executive when terms of office have expired or been vacated. However, those cases shed little light on the matter before us because the ultimate decision usually is founded upon laws that are peculiar in their wording and of little application in other jurisdictions. *Andersen v. Sundlun*, 625 A.2d 213, 215 (R.I.1993).

■■■ (18) We distinguish between "term" and "tenure." The "term" is the fixed period of time the appointee is authorized to serve in office. It is a period that is established by law and specified by the executive in his or her letters of appointment. The "tenure" is the time the appointee actually serves in office. Depending upon the circumstances the tenure can be shorter or longer than the term. *State ex rel. Racicot v. District Court*, 243 Mont. 379, 794 P.2d 1180, 1184 (1990).

## III. POWERS OF THE GOVERNOR WHEN AN OFFICE IS VACATED MIDTERM

(19) When an office is vacated midterm, the powers of the Governor are dictated by Article XX, Section 5 of the New Mexico Constitution.

> If, while the senate is not in session, a vacancy occur [sic] in any office the incumbent of which was appointed by the governor by and with the advice and consent of the senate, the governor shall appoint some qualified person to fill the same until the next session of the senate; and shall then appoint by and with the advice and consent of the senate some qualified person to fill said office for the period of the unexpired term.

N.M. Const. art. XX, § 5 (Repl.Pamp.1992). The parties do not dispute that the word "office" can refer to a position on the board of regents of a state educational institution, and that a regent is therefore an "officer" for the purposes of the constitutional provisions we here discuss.

■■■ (20) This constitutional provision allows the Governor to fill a vacancy in one of two ways depending upon whether the State Senate is in session. If the vacancy occurs when the Senate is in session the Governor may nominate, for approval by the Senate, an appointee to serve until the end of the vacated term. *Id.* If, on the other hand, the vacancy occurs when the Senate is not in session, the Governor may select, without Senate approval, an interim appointee who will serve until the Senate next meets. The Governor must then nominate for approval by the Senate an appointee to serve the remainder of the vacated term. *Id.* Of course, in the latter case, the Governor may nominate the interim appointee for ultimate Senate approval.

(21) The Senate can establish a standing committee that will operate when the Senate is not in session "for the purpose of conducting hearings and taking testimony on the confirmation or rejection of gubernatorial appointments." N.M. Const. art. IV, § 42 (Repl.Pamp.1992). This committee can then make recommendations that will "be submit-

ted to the senate for action at the next succeeding legislative session." *Id.* The submission of a nomination to this standing committee does not in itself confer the consent of the Senate upon that nominee. Nor does committee approval of the nominee guarantee the Senate will confer its consent. The fact that a name has been submitted to the committee—as Horn's and Taylor's were submitted for evaluation by the Interim Senate Rules Committee—in no way permits the nominee to assume office as a full appointee.

■ (22) The selection of an interim officer to fill a vacancy is a different process from the submission of a nomination to the standing committee for senate approval— even if the interim officer and the nominee are the same person. The former actually "takes office immediately" and serves until the Senate meets; the latter may not serve until the Senate has given its consent.

■ (23) Furthermore, these processes for filling a *vacancy* are distinct from the process of installing a new appointee after the previous appointee's term has *expired.* As we will discuss in detail below, when an appointee's term expires, he or she can remain in office until the Senate confirms the Governor's new nominee. Thus, because the position is not vacant—it remains filled by the former appointee pending the appointment of a successor—the Governor cannot, under Article XX, Section 5 make an interim appointment.

### A. Horn and Taylor Could not be Appointed to Fill Vacancies.

■ (24) In this case there was no vacancy in the positions held by Denish and Kelly. Denish and Kelly did not leave office midterm. Instead, their tenure has extended beyond the final date of their terms. As we shall explain below, this holdover beyond the end of a term is not only permissible, it is constitutionally mandated. Therefore, under Article XX, Section 5, Governor Johnson had no authority to install Horn and Taylor as if they were interim appointees who could "take office immediately." There were no vacancies for Horn and Taylor to fill.

(25) In addition, because Article XX, Section 5 only provides authority for the Governor to make appointments to fill *vacant* positions, Governor Johnson could not rely on this provision as authority for submitting the names of Horn and Taylor as successors to Denish and Kelly. As we shall see below, when a term expires but has not been vacated, the Governor's power to appoint candidates is dictated by a different constitutional provision.

### B. Denish and Kelly were Originally Appointed to Fill Vacancies.

■ (26) Though Denish and Kelly cannot be replaced under Article XX, Section 5, it was in accordance with that constitutional provision that they were originally appointed. They were selected by Governor King to fill the vacancies left by Rymer and Anderson. Their names were submitted to and received the consent of the Senate. *See* N.M. Const. art. XX, § 5.

(27) It is important to this case that this section of the Constitution states explicitly that the replacement officer, once approved by the Senate, serves only until end of the vacated term. He or she is not appointed for the full constitutionally specified term length. N.M. Const. art. XX, § 5; *see also* N.M. Const. art. V, § 5 (Repl.Pamp.1992) ("Should a vacancy occur in any state office, except lieutenant governor and member of the legislature, the governor shall fill such office by appointment, and such appointee shall hold office until the next general election, when his successor shall be chosen for the unexpired term."). In this case, Denish and Kelly, who were appointed midterm, can remain in office only for the remainder of their predecessors' unexpired terms.

(28) Denish and Kelly, however, dispute that this rule applies to the regents of New Mexico educational institutions. They argue that Article XII, Section 13 of the State Constitution contains special protections for regents. They point out the fact that "[m]embers of the board shall not be removed except for incompetence, neglect of duty or malfeasance in office." N.M. Const. art. XII, § 13. Moreover, they claim that under Article XII, Section 13, with the excep-

tion of the first five appointees, regents are seemingly guaranteed six year terms:

> The governor shall nominate and by and with the consent of the senate shall appoint the members of each board of regents for each of said institutions. The terms of said nonstudent members shall be for six years, provided that of the five first appointed the terms of two shall be for two years, the terms for [sic] two shall be for four years, and the term of one shall be for six years.

N.M. Const. art. XII, § 13.

■■■■ (29) It is significant, according to Denish and Kelly, that these "special protections for regents" were adopted fairly recently in 1949 and even more recently amended in 1993, while the rules set forth in Article XX, Section 5, have remained unchanged from when the New Mexico Constitution was originally ratified in 1911. They point to the rule of constitutional construction that states when two provisions conflict, the latter provision controls "as the latest expression of the sovereign will of the people, and as an implied modification pro tanto of the original provision of the Constitution in conflict therewith." *Asplund v. Alarid,* 29 N.M. 129, 135, 219 P. 786, 788 (1923). They also claim that the newer provision is more specific than the older because it applies only to regents. They offer a second rule of construction that when "provisions cannot be harmonized, the specific section governs over the general regardless of priority of enactment." *City of Albuquerque v. New Mexico State Corp. Comm'n,* 93 N.M. 719, 721, 605 P.2d 227, 229 (1979). They assert that, under these two rules of construction, Article XII, Section 13 is predominant. Denish and Kelly argue, notwithstanding Governor King's miscalculation in the letters of appointment, that they cannot be removed from office absent a showing of neglect, incompetence, or malfeasance, and that they are entitled to a full term of at least five, if not six, years.

(30) We disagree for two reasons. First, we do not find a conflict between Article XII, Section 13 and Article XX, Section 5 that would make applicable Denish and Kelly's two rules of construction. Second, their argument for a full term ending in 1997 is completely undermined by the fact—articulated in the constitutional provision which they themselves emphasize—that the first five regents appointed after 1949 served staggered terms. We here elaborate upon our two objections.

## C. Article XII, Section 13 and Article XX, Section 5 do not Conflict.

■■■■ (31) The two rules of construction presented by Denish and Kelly apply only when a legitimate conflict exists between two constitutional provisions. *Cf. City of Albuquerque,* 93 N.M. at 721, 605 P.2d at 229 (discussing provisions that conflict). Here there is no conflict between the two provisions. Article XII, Section 13 establishes the boards of regents, specifies the duration of regents' terms, and provides regents with special protection from removal. However this provision is silent with respect to filling vacancies in office. The rules for filling such vacancies are specifically found in Article XX, Section 5. There is nothing in either provision that precludes the two from being applied harmoniously.

(32) Before applying the rules of construction suggested by Denish and Kelly, it is preferable to investigate whether various constitutional provisions can be construed as a harmonious whole. *See State v. Sandoval,* 95 N.M. 254, 256, 620 P.2d 1279, 1281 (1980) (stating that constitutional provisions should "be read together and harmonized in their application if possible"). We presume the drafters of the Constitution intended to construct a synchronous and stable foundation for the State's legal system. It is generally possible to construe the State Constitution as an integrated whole rather than as groupings of isolated and discordant rules. *See Las Cruces TV Cable v. New Mexico State Corp. Comm'n (In re Generic Investigation Into Cable Television Servs.),* 103 N.M. 345, 349, 707 P.2d 1155, 1159 (1985) ("The provisions of the Constitution should not be considered in isolation, but rather should be construed as a whole.").

(33) It is apparent from this analysis that, at the time of the two resignations in 1991, Governor King was only empowered to appoint Denish to fulfill the remainder of Rym-

er's term until 1995, and Kelly to fulfill the remainder of Anderson's until 1993. *See* N.M. Const. art. XX, § 5; *cf. Hoy v. State,* 150 Ariz. 416, 418, 724 P.2d 35, 37 (Ct.App. 1984) (deciding that the five-year term of office runs independently from the occupant's date of appointment); *Andersen,* 625 A.2d at 216 ("The term was fixed by the statute that created the office [and the] term in no way depended upon who or how many persons occupied the office during that term."). We need not attempt to analyze whether Governor King intended to appoint Denish and Kelly for five-year terms, or whether the letters of appointment contained typographical errors or miscalculations. Regardless of Governor King's intentions, he had only one constitutionally permissible option in filling the 1991 vacancies and that was to appoint Denish and Kelly "for the period of the unexpired term." N.M. Const. art. XX, § 5. The Governor has no authority to appoint an officer for a term that differs in length from that stated in the law. *State ex rel. Landis v. Bird,* 120 Fla. 780, 163 So. 248, 254 (1935); *Perkins v. Hughes,* 53 Ariz. 523, 526, 91 P.2d 261, 263 (1939) ("It is the universally accepted rule that if a term of office to be filled by appointment is fixed by law, that any attempt by the appointing power to change the term so fixed is void.").

### D. A Formal Staggering System Controls the Terms of New Mexico Tech Regents.

▮▮▮ (34) Much of the controversy in this case centers upon whether the State Constitution requires regents to serve staggered terms so that no more than two regents, excluding the newly created student-regent position, are replaced at any one time. We conclude the Constitution creates a formal system of staggered terms for the regents of New Mexico Tech. This fact is the second reason we dispute the assertion by Denish and Kelly that they could not have been appointed merely "for the period of the unexpired term" under Article XX, Section 5. Because this matter has caused significant confusion and speculation in this case, it is important to explain the mechanics of staggering terms for regents of the State's educational institutions.

(35) The relevant language is found in Article XII, Section 13 of the New Mexico Constitution, quoted above. This provision states that, upon its effective date, two of the first five appointed regents were to serve terms of two years, two were to serve for four years, and one was to serve for six years. The terms thereafter would be six years for all regents. N.M. Const. art. XII, § 13. This language was added to the New Mexico Constitution by an amendment approved by the voters in 1949. *See* 1949 N.M.Laws, S.J.Res. 11, at 514–15 (Constitutional Amendment 7, amending N.M. Const. art. XII, § 13, adopted at special election held Sept. 20, 1949). The effective date of this amendment was January 1, 1950. *Id.* § 2 ("This amendment shall become effective on January 1st next following its adoption and the Governor shall then immediately appoint the members of the Board."). Our research has disclosed that the first regents serving the shortened two- and four-year terms as well as the full six-year term were appointed in 1951 by then-Governor Edwin L. Mechem. *Cf.* N.M. Att'y Gen.Op. 50–140 (1950) (discussing the fact that then-Governor Thomas J. Mabry, upon the January 1, 1950 effective date of the 1949 amendment to N.M. Const. art. XII, § 13, did not make nominations to the State's boards of regents for approval by the State Senate at its regular biennial meeting in 1951).

#### 1. Formal and informal staggering systems

(36) At issue is whether or not the Governor is bound to preserve a formal scheme of staggering. If he or she is so bound, then the terms following the shortened two- and four-year terms will be for a full six years. Moreover, any appointment to fill a midterm vacancy will merely complete the vacated six-year term.

▮▮▮ (37) The thrust of Denish and Kelly's argument is that it is more important for regents to be appointed for full six-year terms than it is to preserve a staggered scheme by requiring some regents to serve a shorter tenure when filling a vacancy. They

suggest that only the "five first appointed" were intended to be staggered. In contrast, the Governor asks why the drafters of Article XII, Section 13 provided for the initial two-year and four-year shortened terms if they did not intend to create staggered terms for regents. He points out that under basic rules of construction, no part of a constitutional provision should be interpreted so that it is rendered meaningless or superfluous. *See Katz v. New Mexico Dep't of Human Servs.*, 95 N.M. 530, 534, 624 P.2d 39, 43 (1981).

(38) The Governor advocates a system for staggering the terms of regents that we choose to describe as "formal." Denish and Kelly argue for a staggering system that we will identify as "informal." Under a formal scheme the objective is the perpetuation of a rigid staggering plan. A formal scheme explicitly sets up an initial system of staggered terms, defines the length of a full term thereafter, and expressly provides for a vacancy to be filled for the remainder of the vacated term. Under a formal system, the beginning and ending dates of each term of office are forever predetermined. The terms of United States Senators present a familiar example of a formal staggering system. One-third of the U.S. Senate is elected every two years, each Senator serves a six-year term, and vacancies have always been filled only until the end of the vacated term. *See* U.S. Const. art. I, § 3, *amended by* U.S. Const. amend. XVII.

(39) Under an informal system it is more important that the appointee serve the maximum number of years as provided by law. An informal scheme describes the length of a full term, sets up an initial series of staggered terms, but makes no provision for a vacancy to be filled for the remainder of the vacated term. Thus, if the law specifies a six-year term, under an informal system, a vacancy would be filled by a full six-year term irrespective of the date of appointment. Under such a system any actual staggering of terms would at best be loosely maintained. An informal system would be appropriate when appointees who are confronted with complex duties must have an extended period of time to become fully versed in the subtle-ties of their office. Certain public bodies might not be best served by appointees who serve only an abbreviated tenure and are less familiar with their responsibilities.

(40) There are several policies underlying the staggering of the terms of officials who are appointed by the executive. Both formal and informal systems fulfill these policies, although to differing degrees. Staggered terms preserve continuity in the public entity by preventing the theoretical possibility of all appointees being replaced at once. This continuity ensures that there will be no erratic changes of the entity's policies. *See Magnolia Bar Ass'n v. Lee*, 793 F.Supp. 1386, 1411 (S.D.Miss.1992) (discussing the benefits of staggering judicial terms), *aff'd*, 994 F.2d 1143 (5th Cir.), *cert. denied*, 510 U.S. 994, 114 S.Ct. 555, 126 L.Ed.2d 456 (1993). Though individual members may be pressured, this staggering tends to insulate the public entity as a whole from being manipulated for political reasons. *See University of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1208 (1st Cir. 1993) (discussing a board of education). Staggered terms of office also can promote creative tension between new appointees and appointees of a prior administration. *Kaluczky v. City of White Plains*, 57 F.3d 202, 209 (2d Cir.1995) (discussing a city personnel officer). Finally, as noted by the Governor, such a scheme promotes institutional memory by assuring that older appointees have the opportunity to pass on important knowledge and experience to newer appointees.

## 2. The staggering of appointments to the New Mexico Tech Board of Regents

(41) We believe that the intent and effect of the 1949 amendment to Article XII, Section 13 was to create a formal scheme of staggering. The amendment inaugurates the system by staggering the terms of the first five appointees—with shortened two- and four-year terms, and one full six-year term. All subsequent appointees were intended to serve full six-year terms. The amended Article XII, Section 13 was most likely intended to be supplemented by Article XX, Section 5, discussed above, which specifies that vacan-

cies are to be filled "for the period of the unexpired term." Viewing these two constitutional provisions as a harmonious whole, it is apparent that they were intended to maintain a formal staggering scheme. Appointees would either serve full six-year terms or the remainder of vacated six-year terms. In summary, a law governing appointments will be deemed to require a formal system staggering of terms if it includes three elements: 1) shortened terms for initial appointees, 2) full terms for subsequent appointees, and 3) a requirement that vacancies be filled only for the remainder of the vacated term. Together Article XII, Section 13 and Article XX, Section 5 contain all three elements.

(42) Denish and Kelly argue that Article XII, Section 13 does not expressly require staggering after the first five appointees. However, it is not necessary for a law to use the word "stagger" in order to establish staggered terms for appointed officials. Nor does the law need to require explicitly that the scheme be maintained in perpetuity. For example, Article XI, Section 2 of the New Mexico Constitution does not use the word "stagger" when it sets up a staggering scheme for the members of the Corporation Commission:

> The members of the commission shall be elected for the term of six years; provided, that those chosen at the first election for state officers shall immediately qualify and classify themselves by lot, so that one of them shall hold office until two years, one until four years and one until six years from and after January first, nineteen hundred and thirteen; and thereafter one commissioner shall be elected at each general election.

N.M. Const. art. XI, § 2 (Repl.Pamp.1992). The requirement that "thereafter" one commissioner will be elected each year is only an implicit directive that the staggering scheme be maintained. However, like Article XII, Section 13, this provision works in tandem with Article XX, Section 5, so that vacancies are filled only for the remainder of the unexpired term. We found many other similar provisions. See, e.g., NMSA 1978, § 3–2–8(B) (Repl.Pamp.1995) (setting up staggered terms for members of a municipal governing body; does not use the word "stagger"); NMSA 1978, § 3–45–5(B) (Repl.Pamp.1995) (authorizes cities to create five-member housing authorities; does not use the word "stagger"); see also U.S. Const. art I, § 3 (setting up staggered terms for U.S. Senators; does not use the word "stagger"). The formal scheme seems to be the most common staggering system, and in practice it may be the only system used in New Mexico. However, we note that today we are addressing only the staggering system for boards of regents; we have no basis at this time to examine the propriety or use of an informal system for other appointments under New Mexico law.

(43) We have found that in actual practice appointments to the Board of Regents of New Mexico Tech have followed this formal staggering scheme. We culled from New Mexico Tech records and the executive records of the Governors of New Mexico the appointments of every person who has served on the New Mexico Tech Board of Regents since this staggering scheme was initiated in 1951. The results of our research can be found in the chart in the Appendix to this opinion. We exercise our discretion to take judicial notice of the information we obtained from the Records of Appointment, Letters of Appointment, correspondence, and notes in the executive records of the Governors of New Mexico. SCRA 1986, 11–201(C) (Repl.1994) ("A court may take judicial notice, whether requested or not."); SCRA 1986, 1–044(A)(3) (Repl.1992) (judicial notice of executive acts); see also Hartford Accident & Indem. Co. v. Beevers, 84 N.M. 159, 162, 500 P.2d 444, 447 (Ct.App.1972) (discussing "judicial notice of public and private acts of the executive departments"). The chart is the synthesis of that information.

(44) We have determined that since 1951, the only deviations from a formal staggering scheme occurred when Denish and Kelly took office in 1992. As our chart demonstrates, every preceding appointment rigidly preserved the staggering system. Past Governors have always made their appointments effective for the first year of the six-year cycle, and only filled vacancies through the end of a six-year cycle. These guidelines

should have defined the terms of Denish and Kelly.

## IV. POWERS OF THE GOVERNOR WHEN A TERM OF OFFICE EXPIRES

### A. The Terms of Denish and Kelly have Expired.

(45) We made a distinction at the beginning of this discussion between a vacancy in a term of office and the expiration of a term of office. We have concluded that no vacancy exists in the terms of Denish and Kelly and that Governor Johnson had no power to appoint replacements under Article XX, Section 5. However, as just explained, we do find that the terms of Denish and Kelly have expired, and accordingly we conclude that the powers of the Governor lie in a different constitutional provision.

(46) When an appointee remains in office until the end of his or her term, the Governor's only constitutional option is to select a nominee who will be submitted to the Senate for approval. The Constitution has a holdover provision to preclude an office from remaining vacant until the new nominee is "duly qualified": "Every officer, unless removed, shall hold his office until his successor has duly qualified." N.M. Const. art. XX, § 2 (Repl.Pamp.1992). The expression "duly qualified" means that the successor must be chosen according to the requirements of New Mexico state law. In the case of New Mexico Tech regents, due qualification is described in Article XII, Section 13 of the New Mexico Constitution, quoted above: appointees to the boards of regents of educational institutions are nominated by the governor and must receive the consent of the senate.

■ (47) Thus, even though an officer's term is technically expired, he or she will remain in office with all the powers of that office until the successor is duly qualified. Thus, Denish and Kelly are constitutionally empowered to remain in office beyond the predetermined expiration of their terms.

They hold office under the auspices of the holdover provision of Article XX, Section 2 until their successors are duly qualified.

■ (48) When a term expires, the Governor has no power to place a person directly into office as he would an interim appointee to fill a midterm vacancy. *See* N.M. Const. art. XX, § 5; *see also Territory ex rel. Klock v. Mann,* 16 N.M. 744, 747, 120 P. 313, 315 (1911) ("Where provision is made by statute for an officer to hold over until his successor is duly elected and qualified, the holdover is regarded as in all respects a de jure officer and the expiration of his term does not produce a vacancy which may be filled by the authority having the power to fill vacancies."). There is no authority under New Mexico law for the Governor to make a "recess appointment" when a term expires, contrary to the suggestion made in Governor Johnson's letters to Horn and Taylor of August 11, 1995.[11] Whether or not the Senate is recessed, the Governor cannot unilaterally install a new state officer to replace one whose term has expired.

(49) We have indicated that the Governor expressed reluctance to take a position regarding whether the expiration of a term "creates a vacancy for purposes of the governor's interim appointment authority." There should be no mistake that this interim appointment authority does not come into play upon the expiration of a term. The only possible exception to this rule might occur if an appointee was unable to remain in office after the term expired. In that case the office would become vacant and Article XX, Section 5 would apply. In all other circumstances, the holdover provision prevents the possibility of a vacancy before a successor has been duly qualified. *Klock,* 16 N.M. at 748, 120 P. at 315 ("[T]he right to hold-over continues until a qualified successor has been elected or appointed by the body electorate; or the appointing power, which by law is entitled to elect or appoint such successor.").

(50) We note that a regent's term almost always will expire when the Senate is not in

11. Letter from Gary E. Johnson, Governor of New Mexico, to Randall Horn (August 11, 1995); Letter from Gary E. Johnson, Governor of New Mexico, to Dr. Robert E. Taylor (August 11, 1995).

session because the Senate does not meet on the first of January. For this reason the holdover provision of Article XX, Section 2 almost always applies. The Governor's only power in this circumstance is to nominate a replacement who cannot take office until he or she has been duly qualified.

■■■ (51) It is important to recognize that when the law requires staggered terms, the holdover provision is not a simple extension of the expired term. Rather it is an intrusion into the term following. *Cf. Selway v. Schultz,* 268 N.W.2d 149, 151 (S.D.1978) (concluding that the holdover period after the expiration of a term must be included in the successor's term); *Opinion of the Justices,* 112 N.H. 433, 298 A.2d 118, 119 (1972) ("The statute fixes the term of the office, not of the appointee [, and the statute does not extend] the term to include a period of holding over."). Thus, when the Constitution requires regents to serve six-year terms beginning on specified dates, if six months pass before a successor is duly qualified, the successor's actual tenure in office will be reduced to five years and six months. In other words, the term of office will expire at the Constitutionally predetermined time no matter what date the regent actually assumes office. *Selway,* 268 N.W.2d at 151 ("It is clear that the statute fixes the term of the office and not that of the officer.").

(52) The fact that Denish and Kelly have remained in office beyond the ends of their terms will shorten the tenures of their successors. Thus, as the chart in the Appendix indicates, Denish's term ended January 1, 1995. Her successor will thus serve the unexpired portion of the six-year cycle ending on January 1, 2001. Kelly's term ended January 1, 1993. His successor will serve the remainder of the six-year cycle that ends January 1, 1999.

### B. Denish and Kelly could not Summarily be Removed from Office.

(53) The manner in which the Governor attempted to remove Denish and Kelly was unconstitutional. The Governor could not remove Denish and Kelly from office simply because their terms had expired. The New Mexico Constitution does give the Governor

the power to "remove any officer appointed by him unless otherwise provided by law." N.M. Const. art. V, § 5. However, the law does provide "otherwise" for members of the Board of Regents of New Mexico Tech. The Constitution limits the reasons and the manner in which a regent may be removed.

> Members of the board shall not be removed except for incompetence, neglect of duty or malfeasance in office. Provided, however, no removal shall be made without notice of hearing and an opportunity to be heard having first been given such member. The supreme court of the state of New Mexico is hereby given exclusive original jurisdiction over proceedings to remove members of the board under such rules as it may promulgate, and its decision in connection with such matters shall be final.

N.M. Const. art. XII, § 13.

■■■ (54) The Governor's actions did not comply with the constitutional requirements when he first attempted to remove Denish and Kelly and install Horn and Taylor. The Governor did not suggest that either regent was guilty of "incompetence, neglect of duty or malfeasance in office." There are no other grounds than these for removing a regent from office. The Governor's basic concern was that Denish and Kelly were mistakenly appointed for the wrong lengths of time. A state officer may be removed from office "only by a crystal-clear expression of legislative intent." *Twilley v. Stabler,* 290 A.2d 636, 638 (Del.1972). The Governor may not remove regents for reasons outside the express bounds of the State Constitution. The policies behind this limitation are apparent: the state's educational institutions must be free from the possibility of political manipulation; and the integrity and independence of the regents must be protected.

(55) We hold that, though their terms have expired, Denish and Kelly are authorized to continue in office under the constitutional holdover provision until their successors are appointed by the Governor by and with the consent of the Senate at the legislative ses-

sion. *See* N.M. Const. art. XX, § 2; N.M. Const. art. XII, § 13.

## V. A WRIT OF MANDAMUS IS NOT NECESSARY

██ (56) As mentioned at the beginning of this discussion, Governor Johnson has conceded that Denish and Kelly are entitled to retain their positions until their successors are duly qualified in accordance with the State Constitution. Despite this concession, Denish and Kelly are concerned about the Governor's equivocal remarks that the expiration of a term may create a vacancy that he is entitled to fulfill. Denish and Kelly urge that we issue a peremptory writ of mandamus prohibiting the Governor from attempting to remove them as regents in violation of the State Constitution. *See* NMSA 1978, § 44-2-6 (A peremptory writ "shall state concisely the facts showing the obligation of the defendant to perform the act, and his omission to perform it, and command him, that immediately after the receipt of the writ, or at some other specified time, he do the act required to be performed. . . .").

(57) We believe, however, that we have addressed the ambiguities surrounding the Governor's duties in this matter. No writ of mandamus is necessary since Governor Johnson acknowledges the right of Denish and Kelly to remain in office until their successors have received the consent of the Senate. Mandamus is only necessary to require the performance of a specific act. Since the Governor has agreed to the act in question—appointing the successors to Denish and Kelly in accordance with the State Constitution—a writ of mandamus is at this point unnecessary.

## VI. CONCLUSION

(58) For the foregoing reasons we deny as unnecessary the request of Denish and Kelly for a peremptory writ of mandamus. We direct that Denish and Kelly shall remain on the Board of Regents of New Mexico Tech under the holdover provision of Article XX, Section 2 of the New Mexico Constitution until their successors are appointed by the Governor by and with the consent of the Senate at the next legislative session as re-quired by Article XII, Section 13. Though this opinion may be filed after the opening of the next legislative session, we see no reason why the Governor may not, during that session, submit the names of appointees for the consent of the Senate.

**IT IS SO ORDERED.**

BACA, C.J., RANSOM and FROST, JJ., and RICHARD C. BOSSON, Court of Appeals Judge, concur.

## APPENDIX

(59) Executive appointees are matters of public record. Information regarding executive appointments is freely available to anyone with sufficient curiosity and tenacity. We compiled the following chart by first assembling a raw list of all the New Mexico Tech regents from 1950 to the present. This information was obtained by copying the names of the regents included in the annual New Mexico Tech college catalogs. We also relied upon a list included among the exhibits offered by the parties in this case.

(60) Armed with this unrefined list of names and dates, we were able to conduct a directed search of the Records of Appointment, Letters of Appointment, and other related documents filed in the catacombs of the State Archives. We conducted a similar search among the executive records filed in the offices of the Secretary of State. The following chart is a synthesis of those public records.

### KEY TO THE CHART

(61) **1**—signifies the beginning of the six-year terms of nonstudent regents and two-year terms for student regents under a formal staggering plan.

(62) ? after a name—signifies the only two appointments that appeared in our informal list but which we were unable to corroborate with documents from the State Archives or the Secretary of State's office.

(63) The first two columns of names are the six-year cycles that originally began with shortened two year terms, the next two columns of names are the cycles that began with shortened four year terms, and the final

column of names are appointees in the cycles that began with a full six year term.

(64) The effective beginning date and official termination date, obtained from the executive records, is listed for each appointment. These dates, of course, sometimes differ from the actual terms served by the regents. Moreover, the documents that proclaimed the appointments were sometimes dated before or after the date the appointments officially commenced.

(65) It seems from our informal list that Gilbert L. Cano's appointment terminated prematurely in 1989. It also appears that this vacancy was temporarily filled by Lenton Malry whose full six-year term also expired in 1989. We speculate, though we have found no documentation of this appointment, that Malry was appointed to complete the remainder of Cano's term under Article XX, Section 5. Our analysis in this case is not affected by the actual circumstances that lead to Malry serving two years longer and Cano serving two years shorter than specified in their letters of appointment. Under any analysis of this particular situation, the formal staggering scheme was preserved.

| "[O]f the five first appointed | the terms of two shall be for two years, | | | the terms for two shall be for four years, | | | and the term of one shall be for six years." | |
|---|---|---|---|---|---|---|---|---|
| | 6-year cycle | I. | II. | 6-year cycle | III. | IV. | 6-year cycle | V. |
| 1951 | 1 | Cooper Shapley 1/1/51 to 1/1/53 | Thomas M. Cramer 1/1/51 to 1/1/53 | 1 | Frank C. DiLuzio 1/1/51 to 1/1/55 | A. A. Kemnitz 1/1/51 to 1/1/55 | 1 | Holm O. Bursum, Jr. 1/1/51 to 1/1/57 |
| 1952 | 2 | " | " | 2 | " | " | 2 | " |
| 1953 | 1 | Robert W. Botts 2/27/53 to 1/1/59 | " 2/27/53 to 1/1/59 | 3 | " | " | 3 | " |
| 1954 | 2 | " | " | 4 | " | " | 4 | " |
| 1955 | 3 | " | " | 1 | John N. Mathews, Jr. 3/10/55 to 12/31/60 | Richard A. Matuszeski 3/10/55 to 12/31/60 | 5 | " |
| 1956 | 4 | " | " | 2 | " | " | 6 | " |
| 1957 | 5 | " | " | 3 | " | " | 1 | " 1/1/57 to 1/1/63 |
| 1958 | 6 | " | " | 4 | " | " | 2 | " |
| 1959 | 1 | Frank C. Diluzio 3/7/59 to 1/1/65 | " 3/7/59 to 1/1/65 | 5 | " | " | 3 | " |
| 1960 | 2 | " | " | 6 | " | " | 4 | " |
| 1961 | 3 | " | " | 1 | William G. Abbott 3/3/61 to 1/1/67 | Eva M. Larrazolo 3/3/61 to 1/1/67 | 5 | " |
| 1962 | 4 | " | " | 2 | " | " | 6 | " |
| 1963 | 5 | Richard M. Zimmerly 6/20/63 to 1/1/65 | " | 3 | " | " | 1 | Eugene L Coulson 3/8/63 to 1/1/69 |
| 1964 | 6 | " | " | 4 | " | " | 2 | " |

| "[O]f the five first appointed | the terms of two shall be for two years, | | the terms for two shall be for four years, | | | and the term of one shall be for six years." | |
|---|---|---|---|---|---|---|---|---|
| 1965 | 1 | " 1/25/65 to 1/1/71 | " 1/25/65 to 1/1/71 | 5 | " | " | 3 | " |
| 1966 | 2 | " | " | 6 | " | " | 4 | " |
| 1967 | 3 | " | " | 1 | " 3/9/67 to 1/1/73 | Steve S. Torres, Jr. 2/21/67 to 1/1/73 | 5 | " |
| 1968 | 4 | " | " | 2 | " | " | 6 | Henry S. Birdseye 11/22/68 to 1/1/75 |
| 1969 | 5 | " | " | 3 | " | " | 1 | " |
| 1970 | 6 | " | " | 4 | " | " | 2 | " |
| 1971 | 1 | James R. Woods 3/11/71 to 1/1/77 | Ben Shantz 3/11/71 to 1/1/77 | 5 | " | " | 3 | " |
| 1972 | 2 | " | David Rice 7/25/72 to 1/1/77 | 6 | " | " | 4 | George A. Cowan 7/25/72 to 1/1/75 |
| 1973 | 3 | " | " | 1 | " 1/19/73 to 1/1/79 | " 1/19/73 to 1/1/79 | 5 | " |
| 1974 | 4 | " | " | 2 | " | " | 6 | " |
| 1975 | 5 | " | " | 3 | " | " | 1 | John M. Kelly 2/14/75 to 1/1/81 |
| 1976 | 6 | " | " | 4 | " | " | 2 | " |
| 1977 | 1 | Owen Lopez 1/17/77 to 1/1/83 | " 1/1/77 to 1/1/83 | 5 | " | " | 3 | Judy Floyd 11/3/77 to 1/1/81 |
| 1978 | 2 | " | " | 6 | " | " | 4 | " |
| 1979 | 3 | " | " | 1 | " 2/8/79 to 1/1/85 | " 2/8/79 to 1/1/85 | 5 | " |
| 1980 | 4 | " | " | 2 | " | " | 6 | " |

| "[O]f the five first appointed | the terms of two shall be for two years, | | | the terms for two shall be for four years, | | | and the term of one shall be for six years." | |
|---|---|---|---|---|---|---|---|---|
| 1981 | 5 | " | " | 3 | " | " | **1** | " <br> 12/31/80 to 1/1/87 |
| 1982 | 6 | " | " | 4 | " | " | 2 | " |
| 1983 | **1** | Robert Lee Sanchez 2/16/83 to 1/1/89 | Donald W. Morris 2/16/83 to 1/1/89 | 5 | " | " | 3 | " |
| 1984 | 2 | " | " | 6 | " | " | 4 | " |
| 1985 | 3 | Lenton Malry 1/4/85 to 1/1/89 | " | **1** | Gilbert L Cano 1/4/85 to 1/1/91 | " 1/4/85 to 1/1/91 | 5 | " |
| 1986 | 4 | " | " | 2 | " | " | 6 | " |
| 1987 | 5 | " | " | 3 | " | " | **1** | Robert O. Anderson 1/29/87 to 1/1/93 |
| 1988 | 6 | " | " | 4 | " | " | 2 | " |
| 1989 | **1** | Carol A. Rymer 1/1/89 to 1/1/95 | Leo Marquez 1/1/89 to 1/1/95 | 5 | Lenton Malry ? ?/?/89 to 1/1/91 | " | 3 | " |
| 1990 | 2 | " | " | 6 | " | " | 4 | " |
| 1991 | 3 | " | " | **1** | Charles A. Zimmerly 1/1/91 to 1/1/97 | " 1/1/91 to 1/1/97 | 5 | " |
| 1992 | 4 | Diane D. Denish "1/1/92 to 1/1/97" | " | 2 | " | " | 6 | J. Michael Kelly "1/1/92 to 1/1/97" |
| 1993 | 5 | " | " | 3 | " | " | **1** | " |
| 1994 | 6 | " | " | 4 | " | " | 2 | " |
| 1995 | **1** | " | **Student Appointees 2-year cycle** <br> **1** Delilah Vega ? ?/?/95 to 1/1/97 | 5 | " | " | 3 | " |
| 1996 | 2 | X | 2  " | 6 | X | X | 4 | X |

| "[O]f the five first appointed | the terms of two shall be for two years, | | | | the terms for two shall be for four years, | | | and the term of one shall be for six years." | |
|---|---|---|---|---|---|---|---|---|---|
| 1997 | 3 | X | 1 | X | 1 | X | X | 5 | X |
| 1998 | 4 | X | 2 | X | 2 | X | X | 6 | X |
| 1999 | 5 | X | 1 | X | 3 | X | X | 1 | X |
| 2000 | 6 | X | 2 | X | 4 | X | X | 2 | X |