IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMSC-028

Filing Date: August 20, 2015

Docket No. 34,985

STATE OF NEW MEXICO, EX REL.,
GARY K. KING, NEW MEXICO ATTORNEY GENERAL,

    Petitioner,

v.

HON. SHERI RAPHAELSON,
First Judicial District Court Judge,

    Respondent.

ORIGINAL PROCEEDING

Hector H. Balderas, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Petitioner

The Perrin Law Firm
Doug Perrin
Santa Fe, NM

for Respondent

## OPINION

**BOSSON, Justice.**

{1}     Under Article VI, Section 33 of the New Mexico Constitution, a district judge elected to that position in a partisan election is thereafter "subject to retention or rejection in like manner at the general election every sixth year." Section 33 does not specify when this six-year term begins, particularly when the elected judge succeeds a predecessor who has not completed his or her full term in office. In that case, does the successor judge's election mark the beginning of a new six-year term, or does the successor judge assume the six-year

1

term of the predecessor judge? The answer determines when the successor judge must stand for nonpartisan retention election. For the reasons that follow, we hold that under the New Mexico Constitution a judge elected in a partisan election is subject to retention in the sixth year of the predecessor judge's term. Our holding is consistent with the intent and purpose of our New Mexico Constitution.

**BACKGROUND**

**{2}** In 2009, Governor Bill Richardson appointed District Judge Sheri Raphaelson to fill a vacancy in Division V of the First Judicial District Court created when then-District Judge Timothy L. Garcia was appointed to the New Mexico Court of Appeals, leaving an unexpired term of office. A year later, as required by Article VI, Section 35 of the New Mexico Constitution (providing that the appointee "shall serve until the next general election" and that at the election a judge "shall be chosen . . . and shall hold the office until the expiration of the original term"), Judge Raphaelson successfully ran in a partisan election to remain in office as Judge Garcia's successor. Thereafter, Judge Raphaelson had only to run for retention, but in what year?

**{3}** On March 11, 2014, Judge Raphaelson filed a declaration of candidacy to place her name on the ballot for retention in the 2014 general election in accordance with Article VI, Section 34 of the New Mexico Constitution and NMSA 1978, Section 1-8-26 (2013). In the general election, only 55.87 percent of the votes cast were in favor of Judge Raphaelson's retention, falling short of the 57 percent necessary to retain the office as stipulated by Article VI, Section 33(A) of the New Mexico Constitution.[1]

**{4}** Days after the 2014 general election, despite her unsuccessful retention election, Judge Raphaelson publically declared her intent to remain on the bench until January 1, 2017, not January 1, 2015. Judge Raphaelson contended for the first time that her six-year term of office had begun on January 1, 2011, after her successful partisan election, and that she had mistakenly stood for retention prematurely.

**{5}** On November 21, 2014, the State of New Mexico, through the Office of the Attorney General, filed a petition for writ of quo warranto with this Court seeking to remove Judge Raphaelson from the bench due to her unsuccessful retention election. After hearing oral arguments, we issued the writ requested by the Attorney General removing Judge Raphaelson from judicial office effective January 1, 2015. We issue this opinion to explain our reasoning.

**DISCUSSION**

---

[1]*See* New Mexico Secretary of State Official Election Results, *available at* http://electionresults.sos.state.nm.us/resultsSW.aspx?type=JDX&map=CTY (last viewed on July 21, 2015).

**{6}**     Beginning at statehood, New Mexico judges were elected and reelected at periodic partisan elections. That changed in 1988 when the electorate amended the New Mexico Constitution.

**{7}**     "In 1988, the Constitution was amended to institute a merit selection system, in which the governor now fills judicial vacancies by appointment from a list of applicants who are evaluated on a variety of merit-based factors and recommended by a judicial nominating commission." *State ex rel. Richardson v. Fifth Judicial Dist. Nominating Comm'n*, 2007-NMSC-023, ¶ 16, 141 N.M. 657, 160 P.3d 566 (internal footnote omitted); *see also* N.M. Const. art. VI, §§ 35-37. Of particular significance to this case, "[t]he appointed judge is then subject to one partisan election in the next general election, after which he or she is subject to nonpartisan retention election, requiring a fifty-seven percent supermajority to be retained in office." *State ex rel. Richardson*, 2007-NMSC-023, ¶ 16; *see also* N.M. Const. art. VI, §§ 33, 35-37. "The 1988 amendment to the New Mexico Constitution adopting the new judicial selection system was the culmination of over fifty years of efforts to reform the method of selecting judges." Leo M. Romero, *Judicial Selection in New Mexico: A Hybrid of Commission Nomination and Partisan Election*, 30 N.M. L. Rev. 177, 181 (2000).

**{8}**     Judge Raphaelson argues that Article VI, Section 33, which implements the retention requirement, controls her term in office. Paragraph C of Section 33 states that "[e]ach district judge shall be subject to retention or rejection in like manner at the general election every sixth year." Judge Raphaelson interprets this provision to mean that her six-year term began after her partisan election to succeed Judge Garcia in 2010. Therefore, under Judge Raphaelson's interpretation, her term in office would not expire until December 31, 2016. Notwithstanding the unfavorable results of the 2014 retention election, Judge Raphaelson maintains that she should be allowed to remain on the bench through that date. The 2014 retention election was, therefore, a "nullity because Judge Raphaelson's term was not up and had not expired and she was not subject to retention" until 2016.

**{9}**     The Attorney General disagrees, arguing that Judge Raphaelson has misconstrued the 1988 amendments to the Constitution. According to the Attorney General, Judge Raphaelson was properly up for retention in the 2014 general election pursuant to Article VI, Sections 33, 35, and 36 of the New Mexico Constitution. Having not garnered 57 percent of the votes cast on her retention, Judge Raphaelson was required to vacate her position by January 1, 2015. *See* N.M. Const. art. VI, § 34 (stating that the office of district judge "becomes vacant on January 1 immediately following the general election at which the . . . judge is rejected by more than forty-three percent of those voting on the question of retention or rejection").

**{10}**     We analyze these competing positions and conclude that the Attorney General's interpretation is more reasonable considering both the text and the purpose of the 1988 constitutional amendments. We explain our reasoning.

**In 2010 Judge Raphaelson was elected to complete Judge Garcia's six-year term in**

**office, not to begin a new six-year term**

**{11}** "In construing the New Mexico Constitution, this Court must ascertain the intent and objectives of the framers." *See In re Generic Investigation into Cable Television Servs.*, 1985-NMSC-087, ¶ 10, 103 N.M. 345, 707 P.2d 1155. In doing so, "[t]he provisions of the Constitution should not be considered in isolation, but rather should be construed as a whole." *See id.* ¶ 13; *see also Block v. Vigil-Giron*, 2004-NMSC-003, ¶ 9, 135 N.M. 24, 84 P.3d 72 ("In general, we interpret constitutional provisions as a harmonious whole . . . .").

**{12}** Judge Raphaelson's argument relies on interpreting Section 33 of the Constitution in isolation when it prescribes that a district judge shall be subject to retention "at the general election every sixth year." But Section 33 does not prescribe when a judge's six-year term begins, so we cannot confine our analysis to that one paragraph. As the Attorney General rightly points out, Sections 35 and 36 expressly define the term of a judge, like Judge Raphaelson, who is elected to the bench following the interim appointment process. Therefore, in determining when Judge Raphaelson's term begins and ends, we must construe Section 33 in conjunction with Sections 35 and 36. *See Generic Investigation*, 1985-NMSC-087, ¶ 13.

**{13}** Although Section 35 addresses the appointment and election of *appellate* judges, that section, with some exceptions pertaining to the makeup of the judicial nominating committee, is made applicable to district judges as well by Section 36. *See* N.M. Const. art. VI, § 36 ("Each and every provision of Section 35 of Article 6 of this constitution shall apply to the district judges nominating committee . . . .") (internal quotation marks omitted). Thus, we look to Section 35 for guidance. After describing the manner in which the nominating committee operates and the governor's appointment power, Section 35 provides: "Any person appointed shall serve until the next general election. That person's successor shall be chosen at such election and shall hold the office until the expiration of *the original term*." (Emphasis added.)

**{14}** The inclusion of the phrase "original term" in Section 35 is important. The successor judge—whether appointed or elected—holds the office for the remainder of the "original term." Therefore, in calculating the time at which the successor judge will first be subject to a retention election, we look to the date that the "original term" expires. At the very least, the text of Section 35 implies that we focus on the "original term" to calculate the time of future retention elections, particularly in the absence of any other language in the 1988 amendments indicating a contrary result.

**{15}** Here, the "original term" was the term for which Judge Raphaelson's predecessor, Judge Garcia, was retained. In 2008, the people retained Judge Garcia for a new six-year

4

term beginning January 1, 2009.[2] Had Judge Garcia remained on the district court, his term would have ended six years after his retention, on December 31, 2014, and he would have been subject to another retention vote in the 2014 general election. *See* N.M. Const. art. VI, § 33(C) ("Each district judge shall be subject to retention or rejection in like manner at the general election every sixth year.").

**{16}** However, on November 12, 2008, days after Judge Garcia's successful retention election, Governor Richardson appointed Judge Garcia to the Court of Appeals, leaving his district court seat vacant.[3] After the constitutional nomination process was complete, Governor Richardson appointed Judge Raphaelson early in 2009 to fill that vacancy "until the next general election," which took place in November 2010. *See* N.M. Const. art. VI, § 35 ("Any person appointed shall serve until the next general election."). At that partisan election, the voters chose Judge Raphaelson to succeed Judge Garcia and "hold the office until the expiration of the *original term*." *See id.* (emphasis added). Because the "original term" was that of Judge Garcia, Judge Raphaelson was subject to a retention vote at the same time Judge Garcia would have been—the 2014 general election. During that election, she did not receive 57 percent of the vote in her favor, and therefore her seat became vacant on January 1, 2015. *See* N.M. Const. art. VI, § 34 ("The office of any justice or judge subject to the provisions of Article 6, Section 33 of this constitution becomes vacant on January 1 immediately following the general election at which the justice or judge is rejected by more than forty-three percent of those voting on the question of retention or rejection.").

**New Mexico's judicial selection system was designed so that all district judges are up for retention at the same time**

**{17}** As previously stated, Section 35 stipulates that "[a]ny person appointed shall serve until the next general election. *That person's successor* shall be chosen at such election and shall hold the office until the expiration of the original term." (Emphasis added.)

**{18}** Judge Raphaelson argues that the phrase "original term" in Section 35 must be read in context with the phrase "that person's successor." According to Judge Raphaelson, "that person's successor" is the judge elected to succeed the appointed judge at the first partisan election. If the winner of the partisan election is someone other than the appointed judge, then he or she becomes the "successor" to the appointed judge and serves the remainder of the "original term."

**{19}** When, however, the appointed judge is herself successful at the partisan election, Judge Raphaelson maintains that she is not a "successor" judge, as contemplated by Section

---

[2]*See* http://www.nmjpec.org/en/judge-evaluation?election_id=119&year=2008 (last viewed on July 21, 2015).

[3]*See* https://coa.nmcourts.gov/bios/garcia.php (last viewed on July 22, 2015).

35, but is merely one continuing in office. According to Judge Raphaelson, therefore, the phrase "[t]hat person's successor . . . shall hold the office until the expiration of the original term" does not apply because she is not a "successor" to herself. Thus, she would have this Court create a new term of office for appointed judges who succeed at the partisan election, one that would cast aside the "original term" and begin anew with a six-year term upon election.

**{20}** We concede that Judge Raphaelson's position is not inherently unreasonable, particularly if it were supported by some affirmative language in the 1988 amendments. But the text of the Constitution yields no such support. Judge Raphaelson's argument attempts to add a substantive distinction between an appointed judge who wins a subsequent partisan election and an appointed judge who loses a subsequent partisan election. Whatever the policy arguments might be in support of such a distinction, the text of Section 35 ignores them.

**{21}** Of equal importance, we would have to consider the question without regard to context and the history of both the 1988 amendments and the constitutional language that preceded it. Such an examination reaffirms our initial conclusion that the phrase "original term" applies in all situations, regardless of whether the winner at the partisan general election is the appointed judge or a new judge. In a word, New Mexico has consistently followed a practice of uniformity going back many years, one that requires all judges statewide to stand for retention at the same time, a practice modeled on years of history that preceded even the 1988 amendments. We now turn to those lessons of history.

**{22}** "The historical purposes of the constitutional provision are instructive in determining the obvious spirit . . . utilized in [its drafting]." *State v. Boyse*, 2013-NMSC-024, ¶ 16, 303 P.3d 830 (internal quotation marks and citation omitted, alterations in original). The U.S. Supreme Court has observed that "[l]ong settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions." *See N.L.R.B. v. Noel Canning*, ___ U.S. ___, 134 S.Ct. 2550, 2559 (2014) (quoting *The Pocket Veto Case*, 279 U.S. 655, 689 (1929) (alterations in original)). Similarly, this Court has noted the relevancy of past practice in interpreting constitutional and statutory issues. *See Jones v. Murdoch*, 2009-NMSC-002, ¶ 28, 145 N.M. 473, 200 P.3d 523 ("[I]n light of past practice, it would be unreasonable to conclude that the Legislature decided to explicitly give the target the right to alert the grand jury to the existence of exculpatory evidence while nevertheless allowing the prosecutor to reject such offers without a check."); *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 32, 125 N.M. 343, 961 P.2d 768 (holding that "the past practices of the New Mexico Legislature and Executive are instructive" in determining whether the executive branch had exceeded its constitutional powers in enacting and implementing certain welfare regulations).

**{23}** Prior to the adoption of the 1988 amendments, "our Constitution required partisan election of the entire judiciary, with the governor filling judicial vacancies by appointment." *State ex rel. Richardson*, 2007-NMSC-023, ¶ 16 (internal citations omitted). This Court held

6

under the previous system, that the terms for all district court judges were designed to be on the same schedule, beginning and ending at the same time every six years regardless of when or whether the seat became vacant or newly occupied. *See State ex rel. Swope v. Mechem*, 1954-NMSC-011, ¶ 22, 58 N.M. 1, 265 P.2d 336 ("[U]nder all equations of vacancy in these offices, excepting only a vacancy occurring by the creation of a new judge . . . the terms of district judges . . . will begin and end at the same time.").

**{24}** *Swope* involved three district judges who were appointed by former Governor Edwin Mechem, two in 1949 and one in 1951. *See id.* ¶ 1. Each of the three district judges ran and were elected in the first general election following their appointments, Judges Swope and Harris in 1950 and Judge Bonem in 1952. *See id.* ¶ 2. All three judges then intended to run again in 1954 when "the terms of all other district judges [would] expire." *See id.* Governor Mechem, however, notified the three judges that he would not include their offices in the 1954 election proclamation along with all other district judges. The governor contended, as Judge Raphaelson does here, that each judge held his respective office for six years from the date of that judge's election. *See id.* This Court concluded, based on former Article XX, Section 4 of the New Mexico Constitution, that the terms of office for all district judges began and ended at the same time: the 1954 general election. *See Swope*, 1954-NMSC-011, ¶¶ 20-22.

**{25}** The language of former Article XX, Section 4 is substantially similar to the language of current Article VI, Section 35. *Compare* N.M. Const. art. XX, § 4 (1912) ("[T]he governor shall fill such vacancy by appointment, and such appointee shall hold such office until the next general election. His successor shall be chosen at such election and shall hold his office until the expiration of the original term.") *with* N.M. Const. art. VI, § 35 ("Any person appointed shall serve until the next general election. That person's successor shall be chosen at such election and shall hold the office until the expiration of the original term.").

**{26}** This Court held that Governor Mechem's interpretation of the last sentence of Article XX would render the word "expiration" as well as the whole sentence meaningless. *See Swope*, 1954-NMSC-011, ¶ 21 ("If it be said that 'original term,' as applied to these two offices, means any four or six years respectively between two general elections, then the word 'expiration,' in fact, the whole sentence becomes surplusage and meaningless."). This Court concluded, therefore, that under Article XX, Section 4, "there can be no doubt that the appointee or his successor elected at the general election following his appointment serves only until the termination date of the term of the original incumbent." *Swope*, 1954-NMSC-011 ¶ 21. "This means that, under all equations of vacancy in these offices, excepting only a vacancy occurring by the creation of a new judge . . . , the terms of district judges . . . will begin and end at the same time." *Id.* ¶ 22.[4] The Court concluded, as we have

---

[4]Our holding in the present case also does not address the question of newly created judgeships.

in this opinion, that if the drafters of the Constitution "desired to make an exception of this one isolated case, it is hard to believe that it would not have been spelled out with particularity." *Id.* Concluding that the drafters had a valid interest in preserving concurrent terms for all district judges, this Court entered its writ of mandamus compelling the governor to place the three judicial positions on the 1954 ballot. *Id.*

**{27}** The *Swope* opinion encapsulates the common understanding and interpretation of terms of office for district judges, not only at the time, but up to the successful amendment of the Constitution in 1988. In light of this Court's clear holding in *Swope,* the framers of the 1988 amendments had a choice. They could have altered the definition of a term of office, much as the Attorney General argued unsuccessfully in 1954 and Judge Raphaelson does here. But they did not do so. Far from a change in direction, the 1988 amendments enshrine the same understanding and interpretation as *Swope*. Under paragraph E of Article VI, Section 33:

> Every . . . district judge . . . holding office on January 1 next following the date of the election at which this amendment is adopted shall be deemed to have fulfilled the requirements of Subsection A of this section [regarding partisan election] and the . . . judge shall be eligible for retention or rejection by the electorate at the general election next preceding the end of the term of which the . . . judge was last elected prior to the adoption of this amendment.

**{28}** In other words, any district judge holding office on January 1, 1989, was deemed to have been elected in a partisan election and eligible for retention "at the general election next preceding the end of the term of which the . . . judge was last elected." Because, as confirmed in *Swope*, all district judges were elected at the same time every six years prior to the adoption of Article VI, Section 33, paragraph E ensured that all district judges would stand for retention at the same time every six years under the new system.

**{29}** The history of the Division V seat on the First Judicial District Court, which Judge Raphaelson held, illustrates this point. Division V of the First Judicial District was created in 1980. *See* 1980 N.M. Laws, ch. 141. Governor Bruce King appointed J. Michael Francke to fill the new position on May 6, 1980. Judge Francke held that office until 1983, when it was filled by the appointment of Arthur Encinias. Judge Encinias held the position at the time the 1988 constitutional amendments were adopted. Accordingly, Judge Encinias successfully ran for retention in 1990, the first year retention elections were held for all district judges across the state.[5] *See* N.M. Const. art. VI, § 33(E); *see also* Romero, *supra*, at 182 ("All judges sitting in 1988 would be considered to have met the competitive election requirement and would face only retention elections."). Six years later, Judge Encinias was

---

[5]*See* Secretary of State Statewide Results for 1990 General Election http://www.sos.state.nm.us/uploads/files/Election%20Results/CanvassGeneral1990.pdf (last viewed on July 22, 2015).

retained a second time. He retired in advance of the 2002 election, and Judge Garcia was chosen in the partisan election of that same year. Thereafter, Judge Garcia was retained in 2008 simultaneously with all other sitting judges. As discussed above, Judge Raphaelson then filled Judge Garcia's unexpired term which ended in 2014.

**{30}** Uniformity of judicial terms serves a legitimate public purpose. Admittedly, it is not the only way to devise a judicial system. The constitutional framers, both in the distant past and more recently, could have selected a system not unlike the one for which Judge Raphaelson advocates, but clearly they did not. That choice is not unreasonable. It fosters consistency and uniformity thereby avoiding confusion in the electorate. Both judges and the people who will sit in judgment of their performance know exactly when that opportunity arises—and when to focus on that performance—every six years across the state. *See Swope*, 1954-NMSC-011, ¶ 22 (in retaining concurrent terms, the framers of the Constitution were preserving uniformity). Under a contrary interpretation, district judges would have informally staggered terms based capriciously upon when the individual judge was elected, regardless of whose term the judge was filling. Such an interpretation might lead to confusion by creating an uneven and ad-hoc system with judges being elected at differing times. Some years, many judges might stand for retention; other years only a few. The framers and the people who adopted the 1988 amendments should be supported for selecting reason over disorder. *See* Romero, *supra*, at 224-25 (stating that "the nomination-appointment aspect and the electoral aspect have played significant roles in the selection of New Mexico judges" and "[t]wo in-depth examinations of the compromise system concluded that the current system should not be jettisoned").

## CONCLUSION

**{31}** We appropriately granted the State's petition for a writ of quo warranto. Judge Raphaelson was properly up for retention in the 2014 general election pursuant to Article VI, Sections 33, 35, and 36 of the New Mexico Constitution. Judge Raphaelson's failure to earn 57 percent of the votes in favor of retention in the 2014 general election resulted in her loss of the seat. Any effort to remain in office beyond December 31, 2014 contravened the Constitution, justifying our writ of quo warranto.

**{32}   IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____

9

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**