The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:**

**Filing Date: June 2, 2022**

**NO. S-1-SC-38977**

**STATE OF NEW MEXICO, ex rel.,**
**HON. NANCY J. FRANCHINI,**
**HON. ROBERT DAVID PEDERSON,**
**HON. BRYAN BIEDSCHEID,**
**HON. RICHARD JACQUEZ,**
**As New Mexico State District Court Judges**
**And Citizens of New Mexico,**
**THE DISTRICT METROPOLITAN COURT**
**JUDGES' ASSOCIATION, INC.,**
**HON. LINDA ROGERS,**
**HON. ROSEMARY COSGROVE-AGUILAR,**
**As Metropolitan Court Judges and**
**Citizens of the State of New Mexico,**

Petitioners,

v.

**MAGGIE TOULOUSE OLIVER,**
**Secretary of State for the**
**State of New Mexico,**

Respondent.

**ORIGINAL PROCEEDING**

The Vargas Law Firm, LLC
Ray M. Vargas, II
Albuquerque, NM

for Petitioners

Office of the Secretary of State
Dylan Kenneth Lange, General Counsel
Santa Fe, NM

for Respondent

InAccord, P.C.
Daniel A. Ivey-Soto
Albuquerque, NM

for Amicus Curiae

**OPINION**

**BOHNHOFF, Judge.**

{1}  In this case, we address the constitutionality of legislation that staggers retention elections for New Mexico district and metropolitan court judges. In November 2020, New Mexico voters approved an amendment to Article XX, Section 3 of the New Mexico Constitution that authorized the Legislature to enact legislation "to . . . stagger the election of officers for a particular state, county or district office throughout the state." N.M. Const. art. XX, § 3(C). In early 2021, the Legislature passed and the Governor approved Senate Bill 266, which amended NMSA 1978, Sections 1-26-5 and -6 (2021), to provide for staggered retention elections of district court and metropolitan court judges, respectively. S.B. 266, 55th Leg., 1st Sess. (N.M. 2021), https://nmlegis.gov/Sessions/21%20Regular/final/SB0266.pdf. Petitioners, sitting district and metropolitan court judges and their association, brought this mandamus proceeding to challenge the constitutionality of this legislation. Petitioners contend that Article VI, Section 33 of the New Mexico Constitution mandates that retention elections of all district and metropolitan court judges must be held at the same time, and as the more specific provision, it controls over Article XX, Section 3. Following oral argument on December 2, 2021, we denied the petition, concluding that

amended Article XX, Section 3 authorized the Legislature to stagger the retention election cycles for district and metropolitan court judges. We issue this opinion to explain our reasoning.

## I.    JURISDICTION

{2}    This Court has original jurisdiction to hear petitions for writs of mandamus. N.M. Const. art. VI, § 3. Mandamus is a proper remedy to test the constitutionality of a statute when the petitioner has no "plain, speedy, [or] adequate remedy at law." *Bartlett v. Cameron*, 2014-NMSC-002, ¶ 8, 316 P.3d 889 (internal quotation marks and citation omitted); *State ex rel. Sego v. Kirkpatrick*, 1974-NMSC-059, ¶ 6, 86 N.M. 359, 524 P.2d 975. Mandamus may be used in appropriate circumstances to "prohibit unconstitutional official action." *State ex rel. Sugg v. Toulouse Oliver*, 2020-NMSC-002, ¶ 7, 456 P.3d 1065 (internal quotation marks and citation omitted). Petitioners grounded their request for mandamus relief on the fact that, based on the current language of Sections 1-26-5 and -6, Respondent would take action in the near future to place district and metropolitan court judges on the 2022 general election ballot, action which otherwise would be unauthorized. Respondent does not contest jurisdiction. We agree that our jurisdiction was properly invoked to address the constitutionality of Respondent's contemplated action.

## II.  BACKGROUND

{3}  Prior to 1988, "our Constitution required partisan election of the entire judiciary, with the governor filling judicial vacancies by appointment." *State ex rel. Richardson v. Fifth Jud. Dist. Nominating Comm'n*, 2007-NMSC-023, ¶ 16, 141 N.M. 657, 160 P.3d 566 (citations omitted); *accord State ex rel. King v. Raphaelson*, 2015-NMSC-028, ¶ 6, 356 P.3d 1096. At that time, Article XX, Section 4 of the New Mexico Constitution provided that, following the governor's appointment of a district judge to fill a vacancy, "such appointee shall hold such office until the next general election. His successor shall be chosen at such election and shall hold his office *until the expiration of the original term*." (Emphasis added.) *State ex rel. Swope v. Mechem*, 1954-NMSC-011, ¶ 22, 58 N.M. 1, 265 P.2d 336, construed this provision to reflect an intent that the terms of all district judges would be uniform. That is, the terms of all district judges throughout the State would end at the same time every six years, regardless of when or whether the seat became vacant or newly occupied, and consequently all district judges would be subject to re-election at the same time:

> [The last sentence of Article XX, Section 4] applies to all vacancies following an incumbent; assuming the death of an incumbent in the office of . . . district judge, there can be no doubt that the appointee or his successor elected at the general election following his appointment serves only until the termination date of the term of the original incumbent.

> This means that, under all equations of vacancy in these offices, . . . the terms of district judges . . . will begin and end at the same time.

*Swope*, 1954-NMSC-011, ¶¶ 21-22.

{4} New Mexico's system for selecting its judges underwent major revision in 1988. In that year,

> the Constitution was amended to institute a merit selection system, in which the governor now fills judicial vacancies by appointment from a list of applicants who are evaluated on a variety of merit-based factors and recommended by a judicial nominating commission. N.M. Const. art. VI, §§ 35-37. The appointed judge is then subject to one partisan election in the next general election, after which he or she is subject to nonpartisan retention election, requiring a fifty-seven percent supermajority to be retained in office. N.M. Const. art. VI, § 33.

*Fifth Jud. Dist. Nominating Comm'n*, 2007-NMSC-023, ¶ 16 (footnote omitted).

{5} Article VI, Section 35, which addresses the appointment and initial election of appellate judges, provides that "[a]ny person appointed [as a Supreme Court justice or Court of Appeals judge] shall serve until the next general election. That person's successor shall be chosen at such election and shall hold the office until the expiration of the original term." We have held that pursuant to Article VI, Section 36, which states that "[e]ach and every provision of Section 35 of Article [VI] of this constitution shall apply to the district judges nominating committee," the foregoing language in Article VI, Section 35 is applicable to district court judges. *Raphaelson*, 2015-NMSC-028, ¶ 13 (internal quotation marks and citation omitted). We now

similarly conclude that pursuant to Article VI, Section 37, which provides that "[e]ach and every provision of Section 35 of Article [VI] of this constitution shall apply to the metropolitan court judicial nominating committee," that language in Article VI, Section 35 also is applicable to metropolitan court judges.

{6}     In *Raphaelson*, this Court addressed whether, under the 1988 amendments to Article VI of our Constitution, a district court judge elected in a partisan election is subject to retention in the sixth[1] year of his or her predecessor judge's term or in the sixth year following the partisan election in which he or she was first elected. *Raphaelson*, 2015-NMSC-028, ¶ 1. The Court observed that in *Swope*, 1954-NMSC-11, ¶ 22, it had concluded that under Article XX, Section 4, "the terms for all district court judges were designed to be on the same schedule, beginning and ending at the same time every six years regardless of when or whether the seat became vacant or newly occupied." *Raphaelson*, 2015-NMSC-028, ¶ 23. The Court noted that "[t]he language of former Article XX, Section 4 is substantially similar to the language of current Article VI, Section 35." *Id.* ¶ 25. The Court then reasoned that Article VI, Sections 33, 35, and 36 should be given the same construction as Article XX, Section 4:

---

[1]Article VI, Subsections 33(C) and (D) prescribe six- and four-year terms for district court judges and metropolitan court judges, respectively.

5

> The *Swope* opinion encapsulates the common understanding and interpretation of terms of office for district judges, not only at the time, but up to the successful amendment of the Constitution in 1988. In light of this Court's clear holding in *Swope*, the framers of the 1988 amendments had a choice. They could have altered the definition of a term of office . . . . But they did not do so. Far from a change in direction, the 1988 amendments enshrine the same understanding and interpretation as *Swope*.

*Raphaelson*, 2015-NMSC-028, ¶ 27; *see also id.* ¶ 31. The Court also reiterated the public purpose, previously noted in *Swope*, 1954-NMSC-011, ¶ 22, served by this approach to judicial elections: "It fosters consistency and uniformity thereby avoiding confusion in the electorate. Both judges and the people who will sit in judgment of their performance know exactly when that opportunity arises—and when to focus on that performance—every six years across the state." *Raphaelson*, 2015-NMSC-028, ¶ 30.

{7} By 2019, however, the wisdom of continued adherence to a policy of a uniform date for the retention election of all district and metropolitan judges was being questioned. The impetus for revisiting the issue was the increase in the number of district judges in some judicial districts as well as the number of metropolitan judges in Bernalillo County, the State's only metropolitan court, and the impact that those numbers had on election ballots. In 2014, for example, the Bernalillo County general election ballot included twenty district judges and twelve metropolitan judges who were subject to retention election. N.M. Sec'y of State, *Canvass of*

6

*Results of General Election Held on November 4, 2014 – State of New Mexico*.[2] In 2018, the County's general election ballot included eighteen metropolitan court judges who were subject to retention election, and in 2020 the ballot included seventeen district court judges who were subject to retention election. N.M. Sec'y of State, *Canvass of Results of General Election Held on November 6, 2018 – State of New Mexico*;[3] N.M. Sec'y of State, *Canvass of Results of General Election Held on November 3, 2020 – State of New Mexico*.[4] In theory, in 2026, twenty-seven district court judges and nineteen metropolitan court judges could be on the County's general election ballot. This development, which would contribute to lengthier ballots printed with smaller fonts, generated concern among legislators and election administrators. *See, e.g.*, Verified Response of the Secretary of State filed herein at 2 ("[V]oting is very different today than it was in 1954. Now ballot crowding, voter fatigue, and high costs of elections are the major concerns of every election

---

[2]Available at https://www.sos.state.nm.us/voting-and-elections/election-results/past-election-results-2014/ (last visited April 22, 2022) (follow the "2014 Statewide General Election Results Statewide Summary" hyperlink).

[3]Available at https://www.sos.state.nm.us/voting-and-elections/election-results/past-election-results-2018/ (last visited April 22, 2022) (follow the "2018 General Election Results Statewide Summary" hyperlink).

[4]Available at https://www.sos.state.nm.us/voting-and-elections/election-results/election-results-2020/ (last visited April 22, 2022) (follow the "2020 General Election Candidate Summary Results Report" hyperlink).

administrator . . . ."); Brief of Amicus Curiae Legislative Sponsors at 29-30, *State ex rel. Sommer v. Oliver*, S-1-SC-37785 (N.M. July 18, 2019) (discussing prospect that absent staggered retention elections for district and metropolitan court judges, the addition of forty-six retention questions to the Bernalillo County general election ballot every twelve years could "have the potential to overwhelm voters").

{8}    The Legislature attempted to address these concerns in 2019 when it passed and the Governor approved House Bill 407, which included the Nonpartisan Judicial Retention Act, codified at NMSA 1978, §§ 1-26-1 to -6 (2019, amended 2021). H.B. 407, 54th Leg., 1st Sess. (N.M. 2019), https://nmlegis.gov/Sessions/19%20Regular/final/HB0407.pdf. That Act generally provided for staggered retention elections of Supreme Court justices and Court of Appeals, district court, and metropolitan court judges. In particular, Section 1-26-5(B) (2019) provided:

> Terms of office for positions on the district court in each judicial district shall be staggered, as follows:
>
> (1) the term of office for division 1 and for every third division number thereafter shall expire in 2020 and every six years thereafter;
>
> (2) the term of office for division 2 and for every third division number thereafter shall expire in 2022 and every six years thereafter; and

8

(3) the term of office for division 3 and for every third division number thereafter shall expire in 2024 and every six years thereafter.

In similar manner, Section 1-26-6(B) (2019) provided for staggering the expiration of the terms of office of metropolitan court judges in 2022 and 2024 and every four years thereafter.

{9} Soon thereafter, certain district and metropolitan court judges brought a mandamus action challenging the constitutionality of Sections 1-26-5 and -6 (2019) as impermissibly extending their terms of office. *See* Verified Petition for Writ of Mandamus, *State ex rel. Sommer v. Oliver*, S-1-SC-37785 (N.M. July 2, 2019). In *Sugg*, 2020-NMSC-002, ¶¶ 1, 13, we agreed with the petitioning judges and found that the statutes were unconstitutional.[5] However, in that case the constitutional infirmity at issue was not grounded in the conflict between the mandate of uniform judicial elections found in Article VI, Sections 33 and 35, and the legislation's provision for staggering those elections, *see id.* ¶ 11, and we therefore had no occasion to revisit *Swope* or *Raphaelson*. Rather, "the narrow but important question" that we addressed was the Legislature's authority to alter terms of office

___

[5]In *Sugg*, 2020-NMSC-002, we also addressed and upheld related petitions challenging, on the same grounds, the constitutionality of other provisions of House Bill 407 that provided for staggered elections of county commissioners, other county officers, and district attorneys by altering the terms of those offices.

and thus election cycles that are established by the Constitution: "whether the challenged provisions of HB 407, in delaying [the p]etitioners' election cycles and extending—either expressly or . . . by necessary implication—their term limits, exceeded the Legislature's authority." *Sugg*, 2020-NMSC-002, ¶ 11. Following extensive discussion of case law from other jurisdictions, *see id.* ¶¶ 13-22, we concluded that, whether characterized as extending terms or deferring elections, Sections 1-26-5 and -6 (2019) were unconstitutional:

> As to the petitioning judges . . . , the Legislature's attempts to modify their election cycles contravened clear and unambiguous constitutional mandates. Specifically, in requiring district and metropolitan court judges to face retention or rejection at general elections every sixth and fourth year, respectively, the framers of our Constitution evinced a clear intent to establish outer time limits by which retention elections for these classes of judges must be held.

*Sugg*, 2020-NMSC-002, ¶ 20 (internal quotation marks and citation omitted). We nevertheless suggested the Legislature could resolve the problem by proposing a constitutional amendment that would authorize the invalidated legislation: "Assuming, as appears to be the case, that the Legislature wishes to pursue the election-related policy goals sought to be effectuated through the portions of HB 407 that we strike down today, it is its prerogative to propose, and the voters['] to adopt, a constitutional amendment to that end." *Id.* ¶ 23.

10

{10} The Court's invitation was accepted. In its 2020 session, the Legislature adopted House Joint Resolution 8, which proposed to amend Article XX, Section 3 of the Constitution by, among other changes, adding the following language as part of Subsection C:

> The term of a state, county or district officer may be adjusted by law to align or stagger the election of officers for a particular state, county or district office throughout the state. Any such adjustment shall require a legislative finding that the adjustment is to provide for consistency in the timing of elections for that office or to balance the number of offices appearing on the ballot.

H.J.R. 8, 54th Leg., 2nd Sess. (N.M. 2020), https://nmlegis.gov/Sessions/20%20Regular/final/HJR08.pdf. Thereafter, at the November general election, the voters adopted this amending language by a margin of 503,308 in favor to 277,744 against. *Canvass of Returns of General Election Held on November 3, 2020 – State of New Mexico*, *supra*.

{11} Finally, in 2021, the Legislature passed and the Governor approved Senate Bill 266, which amended Sections 1-26-5 and -6 (2019). S.B. 266. The legislation re-adopted nearly verbatim the language of Sections 1-26-5(B) and -6(B),[6] quoted

---

[6]The only differences between the 2019 and 2021 versions of these two sections are that the years of the expiring terms were updated in the 2021 amendment.

above. Section II, paragraph 9, *supra*. The legislation also included, as a temporary provision that was not codified, the following legislative finding:

> Pursuant to Article 20, Section 3 of the constitution of New Mexico, the legislature finds that the judicial term adjustments provided for district court judges in Section 1 of this 2021 act and for metropolitan court judges in Section 2 of this 2021 act are needed to:

> A. balance the number of judicial positions appearing on the ballot in any one election cycle;

> B. enable more effective evaluation of judges by the judicial performance evaluation commission; and

> C. create greater continuity of judges at the trial court level by not having all judges up for judicial retention in the same election cycle.

S.B. 266, § 3.

## III. PETITIONERS' ARGUMENT

{12} Petitioners' argument is straightforward. Article VI, Section 33 of the New Mexico Constitution, as construed by *Raphaelson*, 2015-NMSC-028, ¶ 28, specifically requires that retention elections of all district judges statewide occur at the same time. Article XX, Section 3, as amended in 2020, generally authorizes the Legislature to stagger the dates of elections of district officers. If district and metropolitan court judges are "district officers" within the meaning of Article XX, Section 3, then the two provisions are in conflict. Citing the principle of constitutional construction that, where two constitutional provisions are in

12

irreconcilable conflict, the general provision must yield to the specific provision, Petitioners assert that Article VI, Section 33 must control district and metropolitan court judge retention elections, and as a result Sections 1-26-5 and -6 are unconstitutional.

## IV. PRINCIPLES FOR RESOLVING CONFLICTS BETWEEN CONSTITUTIONAL PROVISIONS

{13}   The primary goal of our interpretation of the Constitution is to identify and give effect to the intent of its framers and the electorate. *State v. Ameer*, 2018-NMSC-030, ¶ 9, 458 P.3d 390; *see also Greene v. Esquibel*, 1954-NMSC-039, ¶ 29, 58 N.M. 429, 272 P.2d 330 ("[T]he polestar in the construction of Constitutions is the intention of the makers and adopters."). In *Asplund v. Alarid*, this Court noted the challenge in discerning intent when constitutional provisions are in conflict:

> Acts passed which conflict with the Constitution are invalid. But the Constitution itself may be amended in the manner provided by it; and when an amendment has been duly made, it becomes as much a part of the Constitution as any other part thereof. It can hardly be asserted that one part of the Constitution is unconstitutional, because it is not in perfect accord with another part of the same instrument.

1923-NMSC-079, ¶ 11, 29 N.M. 129, 219 P. 786 (internal quotation marks and citation omitted). Prior decisions of this Court have articulated several principles to address this situation and construe constitutional provisions which are claimed to be in conflict.

{14}     First, if possible we will construe constitutional provisions in a harmonious manner that will avoid any conflict. *Hem v. Toyota Motor Corp.*, 2015-NMSC-024, ¶ 23, 353 P.3d 1219; *accord State ex rel. League of Women Voters v. Advisory Comm.*, 2017-NMSC-025, ¶ 19, 401 P.3d 734.

{15}     Second, where a constitutional amendment conflicts with a pre-existing provision of the Constitution, and one provision "is not readily identifiable as the more specific of the two" provisions, the later provision governs "'as the latest expression of the sovereign will of the people, and as an implied modification pro tanto of the original provision.'" *City of Albuquerque v. N.M. State Corp. Comm'n*, 1979-NMSC-095, ¶ 6, 93 N.M. 719, 605 P.2d 227 (quoting *Asplund*, 1923-NMSC-079, ¶ 11); *see also Denish v. Johnson*, 1996-NMSC-005, ¶ 29, 121 N.M. 280, 910 P.2d 914 (same).

{16}     Third, and as a qualification to the second principle of recency, if one provision is identifiable as the more specific of the two, "'the specific section governs over the general *regardless of priority of enactment*.'" *Denish*, 1996-NMSC-005, ¶ 29 (emphasis added) (quoting *N.M. State Corp. Comm'n*, 1979-NMSC-095, ¶ 5). The rationale for the general/specific rule is that the enacting body "is presumed not to have intended a conflict between two [provisions] and because [its] attention is more particularly directed to the relevant subject matter in

14

deliberating upon the special law." *State v. Santillanes*, 2001-NMSC-018, ¶ 7, 130 N.M. 464, 27 P.3d 456 (internal quotation marks and citation omitted).[7]

{17}     In New Mexico, the general/specific rule of constitutional construction can be traced to statutory construction principles. *See N.M. State Corp. Comm'n*, 1979-NMSC-095, ¶5 (citing *State v. Blevins*, 1936-NMSC-052, ¶ 7, 40 N.M. 367, 60 P.2d 208; *Saiz v. City of Albuquerque*, 1971-NMCA-101, ¶ 9, 82 N.M. 746, 487 P.2d 174, *overruled on other grounds by Galvan v. City of Albuquerque*, 1975-NMSC-005, ¶ 14, 87 N.M. 235, 531 P.2d 1208; *Santa Fe Downs, Inc. v. Bureau of Revenue*, 1973-NMCA-064, ¶ 11, 85 N.M. 115, 509 P.2d 882); *see also Fifth Jud. Dist. Nominating Comm'n*, 2007-NMSC-023, ¶ 17 ("[R]ules of statutory construction . . . apply equally to constitutional construction."); *Postal Fin. Co. v. Sisneros*, 1973-NMSC-029, ¶ 8, 84 N.M. 724, 507 P.2d 785 ("The usual principles governing the construction of statutes also apply to the interpretation of constitutions.").

---

[7]While three decisions of this Court have articulated the rule that the specific constitutional provision prevails over the general one, in none of these cases has the rule actually been applied. In *New Mexico State Corp. Commission*, neither of the two provisions in question could be characterized as more specific than the other, and the conflict was resolved instead on the basis of the principle of recency. 1979-NMSC-095, ¶ 6. In *Denish*, the two provisions at issue were not irreconcilable and could be construed in a harmonious manner. 1996-NMSC-005, ¶¶ 30-33. And in *League of Women Voters*, the two conflicting provisions again were resolved on the basis of the principle of recency. 2017-NMSC-025, ¶ 23.

{18} The general/specific rule is subject to an exception: "[T]o the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, *unless it appears that the legislature intended to make the general act controlling.*" *Blevins*, 1936-NMSC-052, ¶ 7 (emphasis added) (internal quotation marks and citation omitted); *see also Santillanes*, 2001-NMSC-018, ¶ 7 ("[I]f two statutes dealing with the same subject conflict, [then] the more specific statute will prevail over the more general statute *absent a clear expression of legislative intent to the contrary.*" (emphasis added)). More generally, we have noted that

> the general/specific statute rule should not be applied in a rigid, mechanistic fashion. . . . [T]he general/specific statute rule is merely a tool of statutory interpretation and is not an end to itself. The general/specific statute rule should not be applied in a manner that ignores . . . the overall goal of statutory construction to ascertain and give effect to the intent of the Legislature.

*Id*. ¶ 17 (internal quotation marks and citations omitted).

{19} The same considerations that underlie adoption of the clear intent exception to the general/specific rule of statutory construction counsel its adoption in the context of constitutional construction. *See Block v. Vigil-Giron*, 2004-NMSC-003, ¶ 4, 135 N.M. 24, 84 P.3d 72 ("[O]ur primary goal is to give effect to the intent of the Legislature which proposed [the constitutional provision] and the voters of New Mexico who approved it."). If evidence indicates that the purpose of a later-adopted

16

constitutional provision, whether general or specific, was to accomplish an implicit repeal of an earlier provision, we will give effect to the later-adopted provision. *Cf. Galvan*, 1975-NMSC-005, ¶ 11 (noting that "repeals by implication," while not favored, "will be declared where the last statute is so broad in its terms and so clear and explicit in its words as to show it was intended to cover the whole subject, and therefore to displace the prior statute" (internal quotation marks and citation omitted)).

**V. THE 2020 AMENDMENT TO ARTICLE XX, SECTION 3 IMPLICITLY REPEALED ARTICLE VI, SECTION 33'S REQUIREMENT THAT ALL DISTRICT AND METROPOLITAN COURT JUDGES STAND FOR RETENTION ELECTION AT THE SAME TIME**

{20} How do these principles inform our analysis of the constitutionality of Sections 1-26-5 and -6? Initially, we consider whether "district officer," as used in Article XX, Section 3(C), encompasses district and metropolitan court judges. Judges hold public offices and thus are public officers as opposed to employees. *See* N.M. Const. art. VI, § 19 (barring Supreme Court justices and Court of Appeals, district, and metropolitan court judges from holding any office other than a judicial office); *Perea v. Bd. of Torrance Cnty. Comm'rs*, 1967-NMSC-056, ¶ 8, 77 N.M. 543, 425 P.2d 308 (outlining the characteristics of a public officer and stating that judges are public and judicial officers); *see generally* 63C Am. Jur. 2d *Public*

*Officers and Employees* §§ 9, 19 (2018) (stating that judges are public and judicial officers). In New Mexico, district court judges hold office within specific judicial districts, N.M. Const. art. VI, § 12. Similarly, metropolitan court judges hold their offices within a "metropolitan court district." N.M. Const. art. VI, § 38; NMSA 1978, § 34-8A-1 (2010). "It is presumed that words appearing in a constitution have been used according to their plain, natural, and usual signification and import." *Clark v. Mitchell*, 2016-NMSC-005, ¶ 12, 363 P.3d 1213 (internal quotation marks and citation omitted). We conclude that district court judges and metropolitan court judges are district officers within the meaning of Article XX, Section 3. As a result, Article VI, Sections 33, 35, 36, and 37, and Article XX, Section 3 irreconcilably conflict and cannot be harmonized: Article XX, Section 3 authorizes staggering of terms contrary to this Court's interpretation of Article VI, Sections 33, 35, 36, and 37 as requiring all district and metropolitan court judges to stand for retention at the same time. *See Raphaelson,* 2015-NMSC-028, ¶¶ 28, 31; *Swope*, 1954-NMSC-011, ¶ 22. Because Article VI, Section 33 focuses solely on judicial retention elections, it is the more specific of the two provisions, and therefore in the absence of clear intent to the contrary its provisions would control.

{21}    The succession of legislative and judicial developments during the recent past as described above is evidence of an intent that the 2020 amendment to Article XX,

18

Section 3 controls over the requirement in Article VI, Sections 33, 35. 36, and 37, as interpreted by this Court, that all district and metropolitan court judges must stand for retention election at the same time.

> In the interpretation of a statute, changes made by the act in the previous state of the law may be given consideration. Indeed, one of the recognized rules of construction of statutes is to look to the state of the law when the statute was enacted in order to see for what it was intended as a substitute.

*Bettini v. City of Las Cruces*, 1971-NMSC-054, ¶ 12, 82 N.M. 633, 485 P.2d 967 (internal quotation marks and citation omitted); *see, e.g.*, *Clark*, 2016-NMSC-005, ¶ 16 (relying on "the history and context of Article VI, Section 33" of the New Mexico Constitution to conclude that it did not reflect "any intent by the framers to prohibit nonretained judges from applying for and being appointed to judicial vacancies"); *Vigil-Giron*, 2004-NMSC-003, ¶ 10 ("Finally, any uncertainty as to the legislative intent behind the constitutional provision is removed by the implementing legislation, enacted . . . immediately following the adoption of the constitutional provision."). *See generally Raphaelson*, 2015-NMSC-028, ¶ 22 ("The historical purposes of the constitutional provision are instructive in determining the obvious spirit . . . utilized in [its drafting]." (alterations in original) (internal quotation marks and citation omitted)).

**{22}** In particular, statutory changes—and thus, pursuant to the foregoing authority, a constitutional amendment—may be interpreted in light of court decisions that prompted the amendment. *See, e.g.*, *Trujillo v. Trujillo*, 1986-NMCA-052, ¶ 21, 104 N.M. 379, 721 P.2d 1310 ("The statute [narrowing the scope of tavernkeeper liability regarding alcohol sales to potentially intoxicated persons] was an obvious response to *Lopez* [*v. Maez*, 1982-NMSC-103, 98 N.M. 625, 651 P.2d 1269], . . . [and w]e would contravene legislative intent were we to interpret the statute as broadening the scope of tavernkeeper's liability."), *implicitly overruled on other grounds as recognized in Mendoza v. Tamaya Enters., Inc.*, 2010-NMCA-074, ¶ 20, 148 N.M. 534, 238 P.3d 903; *Feminist Women's Health Ctr. v. Codispoti*, 821 P.2d 1198, 1202 (Wash. 1991) (en banc) (construing statute regarding insurance proceeds exemptions in light of court decisions that preceded its amendment); *cf. Brown v. Shell Oil Co.*, 339 N.W.2d 709, 711 (Mich. App. 1983) ("Amending legislation should be liberally construed so as to correct defects in predecessor statutes.").

**{23}** In 2019, the Legislature enacted Sections 1-26-5 and -6 (2019) as part of an attempt to address concerns about "ballot integrity" and "voter fatigue" by staggering the terms of district and metropolitan court judges along with other officials. *See* Brief of Amicus Curiae Legislative Sponsors at 29-30, *State ex rel.*

*Sommer v. Oliver*, S-1-SC-37785 (N.M. July 18, 2019). In 2020, in *Sugg*, 2020-NMSC-002, ¶ 23, we invalidated the 2019 legislation for lack of constitutional authorization, but invited the Legislature to propose and submit to the voters an amendment to the Constitution that would authorize such staggered elections. The following year, the Legislature passed House Joint Resolution 8, and the voters subsequently approved the amendment to Article XX, Section 3. In 2021, the Legislature with the Governor's approval amended Sections 1-26-5 and -6 (2019) to reinstate the provisions for staggered elections of district and metropolitan court judges. Granted, the Legislature could have made its intent unmistakable by expressly stating in the amendatory language of Article XX, Section 3 that it applied to district and metropolitan court judges. This sequence of events nevertheless reflects with sufficient and reasonable clarity that the 2020 amendment to Article XX, Section 3 was intended to implicitly repeal the requirement in Article VI, Sections 33, 35, 36, and 37, that all district and metropolitan court judges stand for retention at the same time. We therefore hold that Article XX, Section 3 authorizes the Legislature to stagger the retention terms of district and metropolitan court judges and there is no other constitutional bar to such staggering.

## VI. CONCLUSION

{24} Article XX, Section 3 of the New Mexico Constitution, as amended by the voters in 2020, authorized the Legislature to amend Sections 1-26-5 and -6 (2019) to stagger retention elections for district and metropolitan court judges. Accordingly, the petition for writ of mandamus is denied.

{25} **IT IS SO ORDERED.**

                                                _____

**HENRY M. BOHNHOFF, Judge**
**Retired, sitting by designation**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**BRIANA H. ZAMORA, Justice**

_____

**J. MILES HANISEE, Chief Judge**
**Sitting by designation**

_____

**RICHARD C. BOSSON, Justice,**
**Retired, sitting by designation**